No. 23-1709

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

STATE OF MAINE,

*Plaintiff-Appellee,*

v.

3M COMPANY,

*Defendant-Appellant,*

E.I. DUPONT DE NEMOURS & COMPANY, f/k/a E.I. Dupont
De Nemours & Company; CHEMOURS COMPANY; CORTEVA, INC.;
DUPONT DE NEMOURS, INC.; DOW INC.,
CHEMOURS COMPANY FC, LLC,

*Defendants.*

On Appeal from the United States District Court for the
District of Maine, No. 2:23-cv-00210 (Hon. John A. Woodcock, Jr.)

### BRIEF OF APPELLANT 3M COMPANY

Jay S. Geller
LAW OFFICE OF JAY S. GELLER
Lunt Professional Building
74 Lunt Road, Suite 206
Falmouth, ME 04105
(207) 899-1477

Russell B. Pierce, Jr.
NORMAN HANSON
 & DETROY LLC
2 Canal Plaza
PO Box 4600
Portland, ME 04112-4600
(207) 775-0806

Michael A. Scodro
Gary A. Isaac
Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com

Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000

*Counsel for Appellant 3M Company*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, 3M Company certifies that no parent corporation or publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

JURISDICTIONAL STATEMENT ....................................................................3

STATEMENT OF THE ISSUE ...........................................................................3

STATEMENT OF THE CASE .............................................................................4

    A.    Factual Background ..................................................................................4

        1.    PFAS Are Used In A Variety Of Products, Including AFFF. ..................................................................................4

        2.    Cases Involving PFAS Contamination Related To AFFF Are Consolidated In A Multidistrict Litigation. ......................4

        3.    3M And Other Defendants In The Multidistrict Litigation Are Asserting A Government Contractor Defense. ..................................................................................5

    B.    Procedural History ..................................................................................8

        1.    Maine Filed Parallel Lawsuits On The Same Day Alleging That PFAS Contaminated Its Natural Resources ..................................................................................8

        2.    3M Removed Both Lawsuits To Federal Court. .....................9

        3.    The District Court Remanded This Case To State Court. ..................................................................................11

SUMMARY OF THE ARGUMENT .................................................................12

STANDARD OF REVIEW ...............................................................................15

ARGUMENT ......................................................................................................15

THE DISTRICT COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE. ...........................................15

    A.    3M Asserted A Colorable Federal Defense .........................................17

        1.    The Removal Notice Plausibly Alleged Facts Supporting The Requirements To Establish The Government Contractor Defense. .................................................17

        2.    3M Will Assert The Government Contractor Defense In This Action. ..................................................................20

**TABLE OF CONTENTS**
**(continued)**

Page

     3.    The District Court's Analysis Was Incorrect. ........................30

  B.   The Case Is Related To 3M's Supply Of MilSpec AFFF To The Federal Government. ...............................................35

     1.    3M Plausibly Alleged That PFAS From AFFF And Non-AFFF Sources Have Commingled In Maine. ........................35

     2.    Maine's Disclaimer Did Not Sever The Connection Between This Case And MilSpec AFFF. ................................38

     3.    Adopting Maine's Construction Of Section 1442 Would Result In Duplicative Litigation..............................................40

CONCLUSION ........................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
   357 F. Supp. 3d 1391 (J.P.M.L. 2018) .......................................................5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
   2022 WL 4291357 (D.S.C. Sept. 16, 2022) ...............................................20

*Ayo v. 3M Co.*,
   2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018)....................................19, 20

*Baker v. Atlantic Richfield Co.*,
   962 F.3d 937 (7th Cir. 2020) ...................................... 21, 22, 36, 38, 39, 40

*Batchelor v. Am. Optical Corp.*,
   185 F. Supp. 3d 1358 (S.D. Fla. 2016).....................................................34

*Betzner v. Boeing Co.*,
   910 F.3d 1010 (7th Cir. 2018) .................................................................19

*Bossé v. N.Y. Life Ins. Co.*,
   992 F.3d 20 (1st Cir. 2021)......................................................................35

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988) ..........................................................................17, 26

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.*,
   996 F.3d 243 (4th Cir. 2021) ..............................................................27, 35

*Cuomo v. Crane Co.*,
   771 F.3d 113 (2d Cir. 2014)....................................................................19

*Curiale v. A Clemente, Inc.*,
   2023 WL 4362722 (D.N.J. July 5, 2023) .............................................23, 24

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) .............................................................................16, 37

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Dougherty v. A O Smith Corp.*,
2014 WL 3542243 (D. Del. July 16, 2014)................................................34

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ....................................................3, 9

*Edmonds v. Compagnie Generale Transatlantique*,
443 U.S. 256 (1979) ..................................................................25

*Fed. Home Loan Bank of Bos. v. Moody's Corp.*,
821 F.3d 102 (1st Cir. 2016)........................................................35

*Hammer v. HHS*,
905 F.3d 517 (7th Cir. 2018) ......................................................26

*Hayden v. 3M Co.*,
2015 WL 4730741 (E.D. La. Aug. 10, 2015)..........................................34

*Isaacson v. Dow Chem. Co.*,
517 F.3d 129 (2d Cir. 2008)........................................................36

*Jefferson Cnty., Ala. v. Acker*,
527 U.S. 423 (1999) ...................................... 16, 17, 35, 36, 40

*Kelleher v. A.W. Chesterton Co.*,
2015 WL 7422756 (S.D. Ill. Nov. 23, 2015)............................................34

*Kircher v. Putnam Funds Tr.*,
547 U.S. 633 (2006) ................................................................15

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) (en banc)....................................................36

*United States ex rel. Lovell v. AthenaHealth, Inc.*,
56 F.4th 152 (1st Cir. 2022) ....................................................15

*Lovely v. Allstate Ins. Co.*,
658 A.2d 1091 (Me. 1995)..........................................................25, 26, 29

v

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lu Junhong v. Boeing Co.*,
792 F.3d 805 (7th Cir. 2015) ...................................................37

*Madden v. A.H. Voss Co.*,
2009 WL 3415377 (N.D. Cal. Oct. 21, 2009) ...........................34

*Maguire v. Hughes Aircraft Corp.*,
912 F.2d 67 (3d Cir. 1990).......................................................26

*Marley v. Elliot Turbomachinery Co.*,
545 F. Supp. 2d 1266 (S.D. Fla. 2008)................................24, 31

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ...................................................................40

*Minnesota v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023).....................................................36

*Moore v. Elec. Boat Corp.*,
25 F.4th 30 (1st Cir. 2022) ................................... 15, 16, 17, 30, 35, 36, 40

*Nessel v. Chemguard, Inc.*,
2021 WL 744683 (W.D. Mich. Jan. 6, 2021).................... 19, 23, 25, 32, 39

*New Hampshire v. 3M Co.*,
2023 WL 2691376 (D.N.H. Mar. 29, 2023)..................................33, 39, 40

*O'Neil v. Picillo*,
883 F.2d 176 (1st Cir. 1989).....................................................25

*Watson v. Philip Morris Cos., Inc.*,
551 U.S. 142 (2007) ............................................................16, 27

*Willingham v. Morgan*,
395 U.S. 402 (1969) ........................................... 16, 17, 24, 26

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

### Statutes

28 U.S.C. § 1407(a) ........................................................41

28 U.S.C. § 1442 .......................... 3, 9, 10, 15, 16, 35, 36, 38, 39, 40

28 U.S.C. § 1446(a) ......................................................16

28 U.S.C. § 1447(d) ...................................................3, 35

28 U.S.C. § 2107(a) .......................................................3

Removal Clarification Act of 2011, § 2(b)(1)(A), 125 Stat. 545 ...................36

### Rules and Regulations

48 C.F.R. § 9.203(a) .......................................................7

84 Fed. Reg. 70,544 .......................................................4

Fed. R. App. P. 4(a)(1)(A) .................................................3

Fed. R. Civ. P. 42(a) ....................................................41

### Other Authorities

14C Charles Alan Wright et al., *Federal Practice and Procedure* (4th ed. 2023).................................... 15, 16, 19, 24

Don DeYoung et al., U.S. Naval Research Lab., *Fulfilling the Roosevelts' Vision for American Naval Power (1923-2005)* 37 (June 30, 2006)......................................................4, 6

Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* (Oct. 1980) ......................................18

H.R. Rep. No. 112-17 (2011) ..............................................36

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Maine Dep't of Env't Prot., *Per- and Polyfluoroalkyl
    Substances: What are PFAS?* ....................................................4

*MDL Statistics Report – Distribution of Pending MDL Dockets
    by District* 4 (November 16, 2023) ...........................................4

*Second Restatement of Torts* (1965) ................................25, 28, 29

Steven W. Feldman, *Government Contract Guidebook*
    (4th ed. 2020) ...........................................................................6

U.S. Dep't of Def., *Aqueous Film Forming Foam Report to
    Congress* (Oct. 2017)..........................................................6, 19

U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 3
    AFFF* (June 2, 2020).................................................................7

U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 6
    AFFF* (June 2, 2020).................................................................7

U.S. Dep't of Def., *Provisions Governing Qualification:
    Qualified Products List and Qualified Manufacturers List*
    (Aug. 2019) ...............................................................................7

U.S. Navy, *Military Specification: Fire Extinguishing Agent,
    Aqueous Film-Forming Foam (AFFF) Liquid Concentrate,
    Six Percent, for Fresh and Sea Water* (Nov. 21, 1969)..........6, 7

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

This case raises important questions about the construction and application of the statutes that govern federal officer removal. Oral argument would assist the Court's consideration of those issues.

**INTRODUCTION**

Maine brought overlapping lawsuits in state court alleging that per- and polyfluoroalkyl substances (PFAS) in products made by 3M Company and the other defendants contaminated natural resources statewide. As to 3M, the claims in the two actions were practically identical except in one respect. The complaint in this case purported to disavow damages caused by contamination from PFAS used in aqueous film-forming foam (AFFF)—a product that 3M at certain times made for the U.S. military consistent with the military's precise specifications (MilSpec)—and the complaint in the other case sought damages solely caused by contamination from PFAS used in AFFF.

Maine filed the duplicative lawsuits in an effort to avoid federal court in one of the actions. Maine knew that 3M would remove the suit alleging AFFF-related damages to federal court pursuant to the federal officer removal statute and then seek to transfer it to a multidistrict litigation where thousands of AFFF-related lawsuits (including those brought by other States) have been consolidated. By splitting its claims and purporting to disavow damages for AFFF contamination, Maine attempted to insulate this suit from federal officer removal, even though that would mean litigating the scope, cause of, and defenses to Maine's alleged PFAS contamination simultaneously in state and federal court.

1

The Court should reject Maine's attempt to surgically divide its claims to avoid federal jurisdiction. Congress decided that federal officers and those working for them should have a federal forum when they are haled into court for actions arising from their official duties. A defendant therefore is entitled to remove a case to federal court when the defendant plausibly alleges that it has a colorable federal defense and the lawsuit relates to actions it took under color of federal authority. Those requirements, which courts construe to favor removal, are met here. 3M alleged in its removal notice that five military facilities in Maine used MilSpec AFFF, that MilSpec AFFF left those facilities, and that PFAS from the MilSpec AFFF commingled with PFAS from non-AFFF sources at various sites at issue in this lawsuit. Further, the removal notice plausibly alleged that 3M may assert a government contractor defense regarding its production of MilSpec AFFF.

The district court erred in holding that 3M lacked a colorable federal defense. The court reasoned that Maine's AFFF disclaimer obviates the need for 3M to raise a government contractor defense. Yet there are a number of scenarios where 3M would still assert the defense. For example, 3M will raise the defense to argue that contamination of particular natural resources was caused, at least in part, by MilSpec AFFF. Multiple courts have upheld removal in similar circumstances. 3M also will raise the defense if Maine seeks to hold 3M jointly and severally liable for the entire cost of remediating PFAS contamination of natural resources where PFAS from

2

MilSpec AFFF and non-AFFF sources commingled. 3M's federal defense thus is nonfrivolous, which is all that is required at the removal stage.

The Court should reverse the district court's order remanding this case to state court.

## JURISDICTIONAL STATEMENT

3M removed this case to federal district court pursuant to the federal officer removal statute, 28 U.S.C. § 1442, and federal enclave jurisdiction, *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). The district court entered an order remanding the case on July 26, 2023. Appendix (A) 10. This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "an order remanding a case to the State court from which it was removed pursuant to [28 U.S.C. § 1442]" is "reviewable by appeal." 3M timely filed its notice of appeal on August 23, 2023. A241; *see* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUE

Whether the district court erred in holding that 3M does not have a colorable federal defense and thus that federal jurisdiction is lacking under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

### STATEMENT OF THE CASE

**A.    Factual Background**

    **1.    PFAS Are Used In A Variety Of Products, Including AFFF.**

PFAS are manmade chemicals used in consumer goods, such as food packaging, nonstick cookware, and stain repellants, as well as in certain industrial products. *See* A48 ¶ 35; Maine Dep't of Env't Prot., *Per- and Polyfluoroalkyl Substances: What are PFAS?*, https://bit.ly/476cQTG. PFAS are constituents in AFFF, which is used to extinguish flammable liquid fires. 84 Fed. Reg. 70,544, 70,545 (Dec. 23, 2019). AFFF is used to protect "civilian airfields, refineries, and fuel tank farms," and it "is in the inventory of almost all fire departments in the United States." Don DeYoung et al., U.S. Naval Research Lab., *Fulfilling the Roosevelts' Vision for American Naval Power (1923-2005)* 37 (June 30, 2006), https://bit.ly/3ubqUN8 (*Fulfilling the Roosevelts' Vision*).

    **2.    Cases Involving PFAS Contamination Related To AFFF Are Consolidated In A Multidistrict Litigation.**

There are currently approximately 6,400 pending lawsuits in federal court in which plaintiffs raise allegations related to PFAS contamination from AFFF. *See* U.S. Judicial Panel on Multidistrict Litig., *MDL Statistics Report – Distribution of Pending MDL Dockets by District* 4 (November 16, 2023), https://bit.ly/47EKKiz. The Judicial Panel on Multidistrict Litigation

(JPML) centralized those lawsuits in the District of South Carolina. *Id.*; *In re Aqueous Film-Forming Foams ("AFFF") Prods. Liab. Litig.*, MDL No. 2873 (D.S.C.) (*AFFF Litig.*).

Since these lawsuits often involve "the same group of AFFF manufacturers," the JPML held that consolidation will "promote the just and efficient conduct of th[e] litigation" for "the parties and witnesses." *AFFF Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). The cases present "common questions of fact" about, among other things, the chemical properties and effects of PFAS, and the manufacturers' knowledge of those properties and effects. *Id.* The JPML thus held that "[c]entralization will eliminate duplicative discovery," "prevent inconsistent pretrial rulings," and "conserve the resources of the parties, their counsel, and the judiciary." *Id.* Many of the cases in the multidistrict litigation, including cases filed by other States, address alleged PFAS contamination from multiple sources, including both AFFF and non-AFFF sources. *See, e.g.*, Compl. ¶ 221, *People of the State of California v. 3M Co.*, No. 23-cv-1531 (D.S.C.), ECF No. 1-1; Compl. ¶ 5, *State of Wisconsin v. 3M Co.*, No. 23-cv-28 (D.S.C. July 27, 2022), ECF No. 1-1.

### 3.    3M And Other Defendants In The Multidistrict Litigation Are Asserting A Government Contractor Defense.

One of the JPML's reasons for consolidating the AFFF lawsuits is that "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *AFFF Litig.*, 357 F. Supp. 3d at 1394.

AFFF is used to suppress fires on aircraft carriers and at airfields and other military facilities. *Fulfilling the Roosevelts' Vision* 37. According to the Department of Defense, AFFF is a "mission critical product" that "saves lives and protects assets," Office of the Under Sec'y of Def. for Acquisition, Tech., and Logistics. U.S. Dep't of Def., *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017), https://tinyurl.com/wshcww4. Its development has been "one of the most far-reaching benefits to worldwide aviation safety." *Fulfilling the Roosevelts' Vision* 37.

Although AFFF initially was developed by the Navy, the government determined that its manufacture required "the aid of the chemical industry." *Fulfilling the Roosevelts' Vision* 37. In 1969, the Navy issued mandatory technical requirements (known as military specifications or MilSpec) for AFFF supplied to the military. U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* (Nov. 21, 1969), https://tinyurl.com/yxwotjpg (*AFFF Military Specification*); *see generally* Steven W. Feldman, *Government Contract Guidebook* § 4:14 (4th ed. 2020). The MilSpec directed that AFFF conform to precise requirements regarding viscosity, pH value, surface tension, specific gravity, interfacial tension, foamability, fire performance, and corrosion rate. *AFFF Military Specification* 2-3. AFFF suppliers were required to undertake inspection protocols and testing

procedures "to assure supplies . . . conform to [the] prescribed require-ments." *Id.* at 3-10. The Navy has amended the MilSpec for AFFF multiple times since its initial promulgation. *See generally id.*

To be eligible for military procurement, an AFFF product must be "list[ed] on the applicable Qualified Products List." *AFFF Military Specification* 2; *see* 48 C.F.R. § 9.203(a). The Navy adds a supplier's product to the list only after examining and testing it, and determining that it conforms to the MilSpec for that product. U.S. Dep't of Def., *Provisions Governing Qualification: Qualified Products List and Qualified Manufacturers List* 2 (Aug. 2019), https://tinyurl.com/y5asm5bw. The Navy periodically reviews products to "ensure continued integrity of the qualification status." *Id.*

AFFF that complies with the MilSpec for AFFF is known as MilSpec AFFF. For more than 30 years, AFFF products manufactured by 3M were included on the Qualified Products List for MilSpec AFFF. *See* Mot. Summ. J. Ex. 99, *AFFF Litig.*, No. 2:18-mn-2873 (D.S.C. Nov. 5, 2021), ECF No. 1969-24 (U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 3 AFFF* (June 2, 2020); U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 6 AFFF* (June 2, 2020)).

**B.    Procedural History**

**1.    Maine Filed Parallel Lawsuits On The Same Day Alleging That PFAS Contaminated Its Natural Resources.**

On March 29, 2023, Maine filed two complaints against 3M and other companies in state court alleging that its natural resources were contaminated by PFAS. A128-224, A38-127. As to 3M, the complaints were largely identical. Using similar language, they stated the same tort claims against 3M related to its design, manufacture, and supply of products containing PFAS. A187-205 ¶¶ 334-405; A89-107 ¶¶ 243-321. They sought damages for contamination by the same six PFAS compounds. A166 ¶ 209; A38 ¶ 1. They contained the same allegations that 3M was aware of dangers associated with PFAS. A129-130, A153-158 ¶¶ 8-9, 141-64; A43-44, A56-61 ¶¶ 14-15, 78-100. And they generally alleged that PFAS contaminated Maine's groundwaters, surface waters, and other natural resources. A131, A136 & A221-222 ¶¶ 13, 26 & pp. 94-95; A42-43, A44 & A124-125 ¶¶ 11, 19 & pp. 87-88.

But there was one difference between the complaints. In this case, Maine included a carveout in the complaint for certain PFAS-caused damages, stating it was "not seeking to recover . . . any relief for contamination or injury relating to [AFFF]." A43-44 ¶ 15. The complaint in the other case (the putative AFFF action) presented a mirror image. There, Maine stated that it is "not seeking to recover . . . any relief for contamination and injury

8

from PFAS that is *not* related to the manufacture and use of AFFF." A135 ¶ 22 (emphasis added). In addition, the complaint in the AFFF action included what it described as a non-exclusive list of specific locations with alleged PFAS contamination from AFFF, A166 ¶ 210, whereas the complaint here did not list any specific contamination sites. Instead, it generally alleged PFAS contamination "in locations throughout Maine." A38 ¶ 133.

### 2.    3M Removed Both Lawsuits To Federal Court.

3M timely removed the AFFF action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Removal Notice, *Maine v. 3M Co.*, 2:23-cv-0197-JAW (May 8, 2023), ECF No. 1. Maine did not oppose removal of the AFFF action or the JPML's transfer of that action to the multidistrict litigation. *See* Order, *AFFF Litig.*, MDL No. 2873 (J.P.M.L. May 24, 2023), ECF No. 1912.

3M also timely removed this case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and federal enclave jurisdiction, *see Durham,* 445 F.3d at 1250. A11-13 ¶¶ 2-5. The removal notice explained that the case satisfies the three requirements for federal officer removal. First, 3M was acting at the direction of the Department of Defense when it designed and manufactured MilSpec AFFF used by military facilities in Maine, including the Naval Air Station in Brunswick, the Portsmouth Naval Shipyard in Kittery, Loring Air Force Base in Limestone, the

Cutler Navy radio facility, and the Maine Air National Guard Base in Bangor. A11-12, A20-21 ¶¶ 2, 25.

Second, the removal notice explained that the complaint seeks recovery for conduct "relating to" actions 3M undertook for the federal government. 28 U.S.C. § 1442(a)(1). Maine seeks damages for non-AFFF PFAS contamination statewide, including contamination to "drinking water, groundwater, surface water, [and] soil" at "hazardous waste sites, landfills, wastewater treatment plants, and farm fields." A50 ¶ 50. Some of the PFAS that contaminated those sites and natural resources plausibly came from MilSpec AFFF from Maine's military facilities. A21-23 ¶¶ 26-30. The removal notice cited evidence from the military and the Maine Department of Environmental Protection showing that PFAS from MilSpec AFFF "used at some military facilities" plausibly "migrated through groundwater or surface-water pathways to off-site locations"; migrated to "off-site areas of sewage sludge application"; or "was shipped off-site to nearby wastewater treatment plants and municipal landfills." A21-23 ¶¶ 28-29. PFAS from the MilSpec AFFF then plausibly "commingled" with non-AFFF PFAS at those locations. A21-23 ¶¶ 28-29.

Finally, the removal notice explained that 3M has a plausible federal government contractor defense. The MilSpec for AFFF contained reasonably precise specifications governing AFFF. A28-29 ¶¶ 42-43. 3M manufac-

tured AFFF consistent with those specifications. A19-20 ¶ 23. And the federal government was adequately informed by 3M about AFFF's attributes because the government has "long understood that AFFF contains PFAS" and can migrate to groundwater, which has been reported to "raise environmental or health issues." A29-30 ¶ 44.

### 3. The District Court Remanded This Case To State Court.

Maine moved to remand the case to state court. Maine argued that the district court lacked federal officer jurisdiction because Maine has disavowed damages in this case from PFAS contamination caused by AFFF. *See* A43-44 ¶ 15.

The district court granted the motion. Addendum (Add.) 1. The court held that this case was not removable pursuant to the federal officer removal statute because 3M will not have a colorable federal defense to Maine's claims. Add. 21-22. The court reasoned that, "by its disclaimer, the State has taken upon itself the burden as part of its case to demonstrate that the source of contamination in its Non-AFFF lawsuit is not a AFFF source." Add. 21. The court further reasoned that "[i]f the factfinder concludes that the State has failed to meet its burden concerning the source, 3M will prevail." Add. 21. The court stated that the disclaimer "effectively means that the federal officer defense will not be applicable in the State's Non-AFFF lawsuit." Add. 21-22.

The court also noted Maine's representation in its remand motion that "'[i]f it does turn out that contamination in *any* particular site or location is related to AFFF, then the State has disclaimed seeking a recovery in this action for that site or location.'" Add. 17. The court did not address the breadth of this disclaimer—for instance, whether the disclaimer means that Maine will not seek any recovery for remediation of sites or natural resources partially contaminated by MilSpec AFFF and partially contaminated by other sources of PFAS. Nor did the court address what would happen if Maine fails to abide by its commitment not to seek recovery for "contamination . . . related to AFFF," Add. 17, when the case returns to state court.

## SUMMARY OF THE ARGUMENT

This case should proceed in federal court. The district court has jurisdiction under the federal officer removal statute, which requires that (1) 3M was acting under a federal officer's authority when it produced MilSpec AFFF; (2) 3M will assert a colorable federal defense in this case; and (3) the lawsuit relates to the actions 3M took pursuant to federal authority. The first requirement is undisputed here. 3M satisfies the second and third requirements as well.

*First*, 3M has a colorable government contractor defense. As the removal notice averred, the federal government issued, and 3M's products complied with, reasonably precise specifications for MilSpec AFFF, and 3M

did not fail to warn the federal government about any dangers related to MilSpec AFFF that were known to 3M but not to the government. Those averments are more than sufficient to establish that the federal government contractor defense is non-frivolous, which is all that is required at the removal stage. Courts thus routinely uphold the removal of similar actions related to MilSpec AFFF. In fact, Maine did not dispute that 3M's manufacture of MilSpec AFFF satisfied these requirements or contest 3M's removal of the AFFF action on this basis.

Maine cannot, through its pleading, limit the defenses that 3M will assert in this action. 3M will assert the government contractor defense in this action. 3M will raise the defense when it shows, either through cross-examination or its own presentation of evidence during the defense case, that the alleged PFAS contamination stems in whole or in part from Mil-Spec AFFF. When the cause of a plaintiff's injury will determine whether the government contractor defense applies, litigating causation is indistinguishable from asserting the defense. And as multiple courts have held, defendants are entitled to a federal forum for the determination of that question.

3M also may assert the government contractor defense if Maine seeks to use joint-and-several liability to recover from 3M all cleanup costs for PFAS contamination of particular sites or natural resources, despite evidence that part of the contamination stems from 3M-manufactured MilSpec

13

AFFF. Under Maine law, if an injury is indivisible, a defendant that partly contributed to the injury may be liable for it entirely. If some sites or natural resources in Maine are contaminated with PFAS from both MilSpec AFFF and non-AFFF sources, Maine may seek to have 3M cover all cleanup costs. 3M would respond with its government contractor defense, which preempts imposition of liability under state law when such liability would conflict with significant federal interests. 3M is entitled to have a federal court decide whether the federal defense precludes that potential theory of recovery.

*Second,* the case relates to 3M's supply of MilSpec AFFF to the federal government. Under the previous version of the federal officer removal statute, the removing defendant had to show a causal connection between the case and its actions performed under a federal officer. But in 2011, Congress amended the statute to lower the bar to allow for removal so long as the case is "relat[ed] to" a defendant's federal action. That requirement is met here.

While Maine disclaims recovering damages from AFFF, that does not sever this case's connection to MilSpec AFFF. 3M's removal notice plausibly alleged that Maine's natural resources were cross-contaminated by PFAS from MilSpec AFFF from five military facilities. The factfinder will have to address where and how the military used MilSpec AFFF in Maine, how Mil-Spec AFFF migrated from those military facilities to the at-issue natural

resources, and whether the PFAS chemicals found in those natural resources are attributable, at least in part, to MilSpec AFFF. The case therefore relates to MilSpec AFFF.

## STANDARD OF REVIEW

This Court reviews de novo a jurisdictional determination on removal. *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022). Questions of statutory construction are also reviewed de novo. *United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 157 (1st Cir. 2022).

## ARGUMENT

## THE DISTRICT COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), a defendant may remove a civil action to federal court if the defendant is a "person acting under" a federal officer and the action is "for or relating to any act under color of such office." *Id.* The federal officer removal statute provides "an exception to the 'well-pleaded complaint' rule" in that the basis for federal jurisdiction is not limited to the four corners of the complaint; instead, it may arise solely through the federal defense asserted by the defendant. *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006). "[S]ection 1442(a)(1) authorizes removal of the entire [case] even if only one of the controversies it raises involves a federal officer or agency." 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3726 (4th ed. 2023).

15

Section 1442 establishes three requirements that the removing defendant must satisfy: (1) "it was acting under a federal officer's authority"; (2) "the charged conduct was carried out for or relating to the asserted official authority"; and (3) "it will assert a colorable federal defense to the suit." *Moore*, 25 F.4th at 34 (internal quotations omitted).

Those requirements are "liberally construed" in favor of removal. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). Federal officer removal is neither "narrow" nor "limited" because "[o]ne of the primary purposes of the removal state" is to have federal "defenses litigated in the federal courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Consistent with that understanding, courts apply "the same liberal rules employed in testing the sufficiency of a pleading . . . to appraise the sufficiency of a defendant's notice of removal." 14C *Federal Practice and Procedure* § 3733 & n.17 (collecting cases); *see* 28 U.S.C. § 1446(a) (removal notice must include "a short and plain statement of the grounds for removal"). Under that standard, "a defendant's notice of removal need include only . . . plausible allegation[s]" regarding the removal requirements, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), and courts must "credit the [removing defendant's] theory of the case," *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999).

Maine's remand motion did not dispute that 3M was "acting under" a federal officer's authority when it designed, manufactured, and supplied

16

MilSpec AFFF. The existence of federal officer jurisdiction accordingly turns on whether 3M has a "colorable federal defense" and whether the lawsuit is "for or relating to" MilSpec AFFF. Both of those requirements are met.

## A.    3M Asserted A Colorable Federal Defense.

The Supreme Court has "rejected a narrow, grudging interpretation" of the "colorable federal defense" requirement. *Acker*, 527 U.S. at 431 (internal quotations omitted); *see Willingham*, 395 U.S. at 407 (defendant "need not win his case before he can have it removed"). A federal defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37 (internal quotations omitted). 3M satisfied that low bar here.

### 1.    The Removal Notice Plausibly Alleged Facts Supporting The Requirements To Establish The Government Contractor Defense.

3M's removal notice asserted a government contractor defense. To establish that defense, 3M ultimately must show that (1) the federal government used "reasonably precise specifications" for MilSpec AFFF products; (2) 3M's products "conformed to those specifications"; and (3) 3M warned the federal government of any material dangers of MilSpec AFFF that were "known to" 3M but not the federal government. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *see Moore*, 25 F.4th at 37. The removal notice plausibly alleged that 3M will be able to make that showing. In fact, Maine has never challenged that these three requirements are satisfied here.

17

The removal notice explained that the federal government used "reasonably precise specifications" for the formulation, performance, and testing of MilSpec AFFF. A29 ¶ 43. In addition, 3M's AFFF products appeared on the Department of Defense's Qualified Products List, which happens only if the Naval Sea Systems Command has determined that those products conform to the MilSpec. *Id.*

The removal notice also plausibly alleged that 3M was not aware of any material risk regarding MilSpec AFFF that was unknown to the federal government. The MilSpec contained testing protocols and requirements regarding toxicity, chemical oxygen, and biological demand. A29-31 ¶ 44. The federal government has long understood that AFFF contains PFAS, that AFFF constituents may migrate to groundwater, and that some studies suggest potential related adverse effects. A30 ¶ 44 n. 23 (citing U.S. Envtl. Prot. Agency, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts* 1-6 (Nov. 4, 2002), perma.cc/T9PD-FC9M). For example, a 1980 report studying the use of AFFF to suppress fires at military installations concluded that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally." A30 ¶ 44 n. 24 (citing Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), apps.dtic.mil/sti/pdfs/ADA136612.pdf). More recently, the Department of Defense issued a report acknowledging concerns about PFAS raised by the

18

U.S. Environmental Protection Agency but describing AFFF as a "mission critical product [that] saves lives and protects assets." A29-31 ¶ 44 (quoting *Aqueous Film Forming Foam Report to Congress* 1-2).

Those allegations are more than sufficient at the removal stage, where courts do not undertake "fact-intensive motion practice . . . to determine" whether a federal defense will ultimately succeed and where doubts are resolved in favor of removal. *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014). Rather, if the allegations in the "notice of removal are plausible on their face, [the] case belongs in federal court." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1016 (7th Cir. 2018); *see also* 14C *Federal Practice and Procedure* § 3733 ("[T]he same liberal rules employed in testing the sufficiency of a pleading should apply to appraise the sufficiency of a defendant's notice of removal."). As discussed above, 3M's removal notice cited extensive evidence showing that the federal government has long been aware of potential dangers associated with AFFF.

Further, the court overseeing the AFFF multidistrict litigation and other courts uniformly have upheld the removal of similar actions involving MilSpec AFFF based on the assertion of a colorable government contractor defense. *See, e.g.*, Order, *AFFF Litig.*, No. 2:18-mn-2873 (D.S.C. Aug. 24, 2022), ECF No. 2559; Order, *AFFF Litig.*, No. 2:18-mn-2873 (D.S.C. Oct. 1, 2019), ECF No. 325; *see also Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *4 (W.D. Mich. Jan. 6, 2021); *Ayo v. 3M Co.*, 2018 WL 4781145, at *6-15

19

(E.D.N.Y. Sept. 30, 2018). The AFFF multidistrict litigation court also has found, based on extensive evidence, that the government contractor defense presents genuine issues of fact for trial. *See AFFF Litig.*, 2022 WL 4291357, at *12, *15 (D.S.C. Sept. 16, 2022). By definition, a defense that presents triable issues is more than "colorable."

In sum, it is undisputed that the removal notice contains more than sufficient allegations to establish all three requirements for 3M's government contractor defense here.

### 2.    3M Will Assert The Government Contractor Defense In This Action.

3M will assert its colorable federal government contractor defense in this case even though Maine alleges that it "is not seeking to recover . . . for contamination or injury related to" AFFF. A43-44 ¶ 15.  Notwithstanding Maine's disclaimer, there are at least three ways in which 3M will assert the federal government contractor defense.

***Establishing causation.*** 3M will be asserting the defense every time it seeks to show that PFAS contamination was caused by MilSpec AFFF. The removal notice explained that 3M has a federal defense to Maine's claims because PFAS from MilSpec AFFF plausibly migrated from five military facilities, commingled with PFAS from other sources, and contaminated natural resources. A21-24 ¶¶ 27-32. 3M must establish those facts to prove its defense, so 3M will have to rebut Maine's evidence that PFAS came

20

from a non-AFFF source. 3M is entitled to put on its own evidence explaining how MilSpec AFFF could have reached the contamination sites at issue.

Consider a scenario where Maine presents evidence of PFAS contamination of a lake. Maine's affirmative case during direct examination may appear to establish that the PFAS in the lake came from a non-AFFF source. On cross-examination, however, 3M may elicit testimony showing that at least some of the PFAS came from MilSpec AFFF. Additionally, 3M may present affirmative evidence during its own case-in-chief further supporting its assertion that some or all of the PFAS came from MilSpec AFFF. Each time 3M elicits evidence to support its assertion that MilSpec AFFF caused the PFAS in the lake, 3M necessarily will be presenting the government contractor defense.

Other courts agree that presenting evidence about the *cause* of a plaintiff's injury is part and parcel of asserting a federal government contractor defense when answering the causation question will determine whether the federal defense applies. For example, in *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), public housing residents alleged that companies had polluted the soil around their residences with lead and arsenic. *Id.* at 939. But during the time period in question, the companies supplied products to the military that may have caused the pollution. *Id.* at 939-40. The residents "purport[ed] to disclaim that their lawsuit [wa]s about" those

products. *Id*. at 945 n.3. The companies nonetheless removed the case to federal court to assert a government contractor defense. *Id*. at 940-41.

The Seventh Circuit upheld that removal. It explained that the parties "dispute[d] whether the Residents' injuries ar[o]se" from the products the companies supplied to the military. *Baker*, 962 F.3d at 945 n.3. Even though the residents "raised serious questions about whether the . . . pollution . . . flowed from" those products, the court concluded that "those are *merits questions* that a federal court should decide." *Id*. at 944. As the Seventh Circuit explained, the "difficult causation question" was one "that a federal court should . . . resolve" because the causation issue would determine whether the defendants would have a government contractor defense at all. *Id*. at 945 n.3.

*Baker* is on all fours with this case. Like the residents in *Baker*, Maine seeks to recover for injuries caused by pollution but disclaims recovery related to waste streams from a product supplied to the military. The parties dispute the cause of the alleged injuries, and the answer to the causation question will be part of the determination whether the defendant has a valid government contractor defense. The result here should be the same as in *Baker*—3M should have the benefit of a federal forum for the causation questions that will govern its federal defense.

*Baker* is not alone. Multiple courts have held that determining whether a plaintiff's injury was caused by a product manufactured for the

federal government (and for which there is a federal defense) is an inquiry that belongs in federal court. For instance, in *Nessel v. Chemguard, Inc.*, Michigan attempted to avoid federal court by splitting its PFAS claims. Michigan filed a MilSpec AFFF lawsuit and a non-MilSpec AFFF lawsuit and disclaimed damages for military-related AFFF contamination in the latter. 2021 WL 744683, at \*1, \*3. The district court upheld removal of the non-MilSpec AFFF case because the defendant was entitled to a federal forum for the "detailed fact-finding process to determine whether the" plaintiffs' injuries were caused by MilSpec AFFF. *Id.* at \*3. Despite the disclaimer, the causation issue was not solely a question for Michigan to prove as part of its case in chief. That issue was also part of the government contractor defense, so the state could not use its pleading to "prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory" of harm. *Id.*

Similarly, in *Curiale v. A Clemente, Inc.*, 2023 WL 4362722 (D.N.J. July 5, 2023), Dupont removed the case to federal court because the plaintiffs' alleged injuries plausibly were caused by chemicals it manufactured for the federal government. *Id.* at \*3. The district court upheld that removal "despite Plaintiff's disclaimer" of injuries from those chemicals. *Id.* at \*4. The court explained that DuPont was "entitled to put forward an alternate theory of causation . . . by asserting that the injuries" may have "resulted from activity DuPont engaged in at the federal government's instruction."

*Id*. at *6. The district court explained that the plaintiffs could not avoid federal court "by disclaiming harm resulting from [the] chemicals." *Id*.; *see also Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008) (finding federal-officer jurisdiction, despite disclaimer, because defendants "ha[d] the right to have" the causation issue "decided in federal court").

In other words, when a plaintiff's injury was plausibly caused by conduct performed under a federal officer, a factfinder's determination about causation is inseparable from the defendant's assertion of its government contractor defense. So 3M will be raising its federal defense in this case whenever it attempts to show—either through cross-examination during Maine's case in chief or through the introduction of evidence during the defense case—that PFAS contamination of particular sites or natural resources in Maine was caused in whole or in part by MilSpec AFFF. Congress decided to ensure a federal forum for that defense even though the defense may address only a portion of 3M's potential liability. *See Willingham*, 395 U.S. at 406; 14C *Federal Practice and Procedure* § 3726.

**Opposing joint-and-several liability for an indivisible injury.** 3M also may raise its government contractor defense to limit a damages award if the factfinder cannot determine how much PFAS contamination of a particular site or natural resource was from non-AFFF sources and how much was from MilSpec AFFF. In that circumstance, Maine may seek to

24

hold 3M liable for all remediation costs under a theory of joint-and-several liability.

For "indivisible injury" cases, Maine has adopted the approach in the *Second Restatement of Torts*. Under that approach, "each defendant is liable for the entire amount of the damages" where "joint tortfeasors . . . have caused a single injury that is incapable of apportionment." *Lovely v. Allstate Ins. Co.*, 658 A.2d 1091, 1092 (Me. 1995); *see Restatement (Second) of Torts* § 433A (1965). That approach has been applied in environmental cases to assess whether one defendant may be held liable for all of the cleanup costs for a site polluted by multiple entities. *See, e.g.*, *O'Neil v. Picillo*, 883 F.2d 176, 178-79 (1st Cir. 1989) (applying *Restatement* standard in CERCLA action). And under the *Restatement*, if an indivisible injury is caused partly by an immune tortfeasor, the remaining defendants may be liable for the entire injury. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 n.8 (1979) (citing *Restatement (Second) of Torts* §§ 433A, 880).

Here, Maine offered no evidence in its motion to remand that PFAS contamination from AFFF and non-AFFF sources will be distinguishable. *See Nessel*, 2021 WL 744683, at *3 (similar). If, following fact and expert discovery, the factfinder will be unable to determine the extent to which the PFAS contamination of a given natural resource came from MilSpec AFFF, as opposed to non-AFFF sources, Maine may assert a joint-and-several liability theory seeking to hold 3M liable for the entire cleanup cost.

If that happens, 3M would be entitled to invoke its government contractor defense to assert that Maine's joint-and-several liability rules cannot be applied to make 3M "liable for the entire amount of the damages." *Lovely*, 658 A.2d at 1092. The defense exists, the Supreme Court has explained, because in "areas . . . involving uniquely federal interests," state law is "pre-empted and replaced." *Boyle*, 487 U.S. at 504 (quotation marks omitted). The defense thus disrupts normal state-law liability rules when "a significant conflict exists between an identifiable federal policy or interest and the [operation] of state law." *Id.* at 507 (quotation marks omitted); *see Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 70 (3d Cir. 1990) (If "a significant conflict is found to exist" between state tort law and federal interests, "state tort law is pre-empted and the government contractor defense as defined by federal law will apply."). The court hearing this case thus may have to decide whether Maine's joint-and-several liability regime conflicts with the federal interests that the government contractor defense protects.

A federal court should be the one to resolve that question. As discussed above, Congress decided "as a policy matter . . . that [a] federal defense should be decided in federal court" when it is asserted by a defendant who acted under a federal officer. *Hammer v. HHS*, 905 F.3d 517, 532-33 (7th Cir. 2018). That policy "should not be frustrated by a narrow, grudging interpretation" of federal officer removal. *Willingham*, 395 U.S. at 407. Doing

so would undermine the "basic purpose" of the federal officer removal statute to "protect the Federal Government from the interference with its 'operations' that would ensue were a State able" to sue a federal officer in "State court for an alleged" violation of state law. *Watson*, 551 U.S. at 150.

Those concerns are equally implicated when a private contractor "acts as an assistant to a federal official in helping that official" carry out federal operations. *Watson*, 551 U.S. at 151. That is so even when the federal defense applies only to a portion of the liability at issue. *See, e.g.*, *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 252 n.8 (4th Cir. 2021) (holding federal officer removal appropriate even though only 8% of the alleged conduct was performed under a federal officer). Thus, if Maine seeks to hold 3M liable for the entire cost of remediating a site or natural resource where PFAS from non-AFFF and MilSpec AFFF sources are commingled and indistinguishable, a federal court should decide whether applying Maine's joint-and-several liability scheme would create a significant conflict with the federal interests animating the government contractor defense.

None of this is changed by Maine's disclaimer in the complaint and the remand motion. Before the district court, Maine asserted that "[i]f it does turn out that contamination in *any* particular site or location is related to AFFF, then the State has disclaimed seeking a recovery in this action for that site or location" in this case. A233; *see also* A43-44 ¶ 15. (Of course,

Maine has not actually "disclaimed" all recovery because at the least, it would seek recovery for the contamination in the AFFF action currently in federal court.) But, in any event, the disclaimer is vague—it is unclear what Maine means by "related to AFFF." And regardless, Maine may seek to hold 3M liable for all contamination at a "site or location" with PFAS from commingled non-AFFF and MilSpec AFFF sources under a joint-and-several liability theory. It has never disclaimed that theory of recovery.

***Opposing joint-and-several liability for a divisible injury***. 3M also may raise its government contractor defense if Maine seeks damages for all PFAS contamination of a natural resource where the factfinder has determined the amount of PFAS that stems from MilSpec AFFF.[1]

3M maintains that when an injury is divisible (*i.e.*, the factfinder can determine the amount of the injury caused by the defendant's conduct), the appropriate remedy under Maine law is to hold the defendant liable only for the portion of the injury that the defendant caused. That is the approach adopted by the *Restatement*, which provides that "[d]amages for harm are to be apportioned among two or more causes where . . . there is a reasonable

---

[1]  It is not clear that a factfinder could make this determination. As described above (at p. 25), there is no evidence that PFAS molecules released into the environment can be distinguished in a manner that would allow a factfinder to trace the ultimate source of those molecules to MilSpec AFFF. 3M includes this possibility because the factfinder may conclude that it can determine that certain PFAS came from MilSpec AFFF.

basis for determining the contribution of each cause to a single harm." *Restatement (Second) of Torts* § 433A; *see Lovely*, 658 A.2d at 1092-93 (applying Section 433A). Consistent with this principle, the *Restatement* notes that "[s]uch apportionment is commonly made" in pollution cases. *Restatement (Second) of Torts* § 433A cmt. d. For instance, "where two or more factories independently pollute a stream," damages "may be apportioned among the owners of the factories, on the basis of evidence of the respective quantities of pollution discharged into the stream." *Id*. Similarly here, if a factfinder determines, hypothetically, that 40% of the PFAS at a contamination site is attributable to non-AFFF products manufactured by 3M and 60% comes from MilSpec AFFF, 3M should be held liable only for 40% of the cleanup costs for that site.

Maine might, however, seek to use joint-and-several liability to hold 3M liable for all PFAS found at a site, even though a factfinder has determined that a measurable amount of the contamination is attributable to AFFF. That is the approach proposed by New Hampshire, which also has a pending lawsuit against 3M putatively seeking damages only for non-AFFF contamination. *See* Oral Argument, *New Hampshire v. 3M Co.*, No. 23-1362 (1st Cir. Oct. 2, 2023), https://bit.ly/40ZVVQz (20:11–21:15). While New Hampshire, like Maine, purported to disclaim damages for AFFF contamination, New Hampshire told this Court during oral argument that 3M still

29

could be liable for *all* PFAS found in a natural resource—including contamination from AFFF—when a factfinder has determined that a measurable amount of the PFAS is from AFFF. *Id.*

If Maine were to adopt the same position—which seems likely in light of the similarities between the disclaimers in the two cases, *see* Add. 13, 21-22—3M would be entitled to assert its government contractor defense in response. For the same reasons described above (at 26-27), 3M is entitled to a federal forum for the determination of whether the government contractor defense applies and would preempt Maine's joint-and-several liability rules. And as shown by New Hampshire's example, Maine's disclaimer that it will not seek damages in this case for PFAS contamination "related to" AFFF is no guarantee that it will not attempt to use joint-and-several liability as a workaround to attempt to force 3M to pay for PFAS contamination caused by MilSpec AFFF.

In short, 3M's government contractor defense is far from "frivolous," *Moore*, 25 F.4th at 37, and the case should remain in federal court so that 3M will have a federal forum to adjudicate that defense.

### 3.    The District Court's Analysis Was Incorrect.

The district court advanced several reasons why 3M does not have a colorable federal defense in this case. Each of those reasons is incorrect.

*First*, the district court erroneously held that 3M will not assert a government contractor defense because Maine disclaimed damages from AFFF.

Add. 21-22. The district court reasoned that, through the disclaimer, Maine "has taken upon itself the burden . . . to demonstrate that the source of contamination in its Non-AFFF lawsuit is not a AFFF source" and that this "effectively means that the federal officer defense will not be applicable." Add. 21-22. In other words, because Maine defined its injury as PFAS contamination from sources other than AFFF, the district court determined that Maine would establish the cause of contamination as part of its case in chief, obviating the need for a government contractor defense. That narrow interpretation of a federal defense is incorrect.

As discussed (at 20-24), establishing that a plaintiff's injury was caused by conduct undertaken at the behest of the federal government is fully part of the government contractor defense. As another court explained, disclaimers like Maine's here do not avoid federal officer jurisdiction because the disclaimer's "applicability depends on a determination of the core question in this case," namely, whether Maine was injured by actions by 3M that were "required or caused by [its] contractual relationship" with the military. *Marley*, 545 F. Supp. 2d at 1274. Thus, holding that jurisdiction is lacking based on the disclaimer "would defeat the purpose" of the federal officer jurisdiction statute by "forc[ing] federal contractors to prove in state court" that the plaintiff's injury was caused by actions the defendant undertook for the federal government. *Id*. at 1275.

31

*Second*, the district court erred, Add. 19-21, in rejecting *Nessel v. Chemguard, Inc*. The *Nessel* court held that it had federal officer jurisdiction in a case brought by Michigan to recover for contamination from commercial AFFF, *i.e.*, non-MilSpec AFFF. 2021 WL 744683, at *1, *3. Even though commercial AFFF is not subject to the government contractor defense, the *Nessel* court recognized that the defense still would be implicated whenever the defendants sought to show that the contamination at issue was actually from MilSpec AFFF. *Id*. at *3. And, the court reasoned, "detailed fact-finding" about the source of the contamination is "for [a] federal—not state—court[] to answer." *Id*.

The district court here erroneously found *Nessel* inapplicable because Michigan's complaints both involved types of AFFF (MilSpec AFFF and commercial AFFF) rather than, as here, AFFF and non-AFFF sources of PFAS. Add. 20. But that is a distinction without a difference. In *Nessel*, as here, a state plaintiff disavowed damages from PFAS sources that plainly afforded a federal defense—there MilSpec AFFF, here all AFFF products (including MilSpec AFFF). And like the factfinder in *Nessel*, the factfinder here will need to determine whether the PFAS pollution at issue was caused in part by MilSpec AFFF. In that respect, *Nessel* and this case are identical. As *Nessel* recognized, federal officer jurisdiction exists to provide a federal forum for the defendant to show that the case implicates actions that it took

32

under a federal officer. *See supra* p. 23. The result therefore should be the same here: The Court should hold that there is federal jurisdiction.

*Third*, the district court's reliance (Add. 20-21) on *New Hampshire v. 3M Co.*, 2023 WL 2691376 (D.N.H. Mar. 29, 2023), *appeal docketed*, No. 23-1362 (1st Cir.) (oral argument held October 2, 2023), was error. *New Hampshire* also involved an attempt to split AFFF and non-AFFF lawsuits and a similar disclaimer by New Hampshire about AFFF-related damages. The *New Hampshire* court reasoned that if the factfinder could not distinguish between AFFF and non-AFFF contamination at a site, "the State will fail to establish its own case," and "if a factfinder can distinguish the sources of contamination, 3M will prevail to the extent the factfinder determines contamination came from AFFF." 2023 WL 2691376, at *9. The district court here relied on that language to hold that, due to Maine's disclaimer, 3M will never need to assert a government contractor defense. *See* Add. 20-22.

But that is incorrect. The *New Hampshire* court overlooked the fact that a defendant asserts the government contractor defense whenever it seeks to show that the plaintiff's injury was caused by conduct performed under federal authority; a plaintiff cannot plead around that defense. And the *New Hampshire* court did not have the opportunity to address the need to assert a government contractor defense should New Hampshire seek to hold 3M liable under a joint-and-several liability theory. New Hampshire did not raise that possibility until its oral argument on appeal before this

Court. *See supra* pp. 29-30. *New Hampshire* therefore does not establish that 3M lacks a colorable federal defense here.

*Fourth*, the district court relied on several out-of-circuit remand orders that did not confront the questions presented here. Add. 20-21 (citing *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1361 (S.D. Fla. 2016); *Hayden v. 3M Co.*, 2015 WL 4730741, at *1 (E.D. La. Aug. 10, 2015); *Kelleher v. A.W. Chesterton Co.*, 2015 WL 7422756, at *2-3 (S.D. Ill. Nov. 23, 2015); *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *16 (D. Del. July 16, 2014); *Madden v. A.H. Voss Co.*, 2009 WL 3415377, at *2-3 (N.D. Cal. Oct. 21, 2009)). In each of those cases, the plaintiffs sued asbestos manufacturers in a single action for alleged injuries from asbestos exposure and disclaimed damages from exposure that occurred during their military careers. But none of those decisions considered whether defendants assert a government contractor defense when they seek to show that a plaintiff's injury was caused by a product developed for the military. The orders therefore do not address whether the causation question here is part and parcel of 3M's federal defense. None of the decisions considered how the government contractor defense would arise if the plaintiffs' injuries were caused, at least in part, by exposures during their military careers and they nevertheless pursued joint-and-several liability. Moreover, none considered the issue in the context of plaintiffs splitting their claims into multiple lawsuits. These orders simply provide no guidance on the questions raised in this case.

34

**B.     The Case Is Related To 3M's Supply Of MilSpec AFFF To The Federal Government.**

Although the district court did not address whether this case is related to actions 3M undertook for the federal government, this Court should exercise its discretion and address this "quintessentially legal issue[]" because it requires "no further development of the record . . . to resolve." *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 32 (1st Cir. 2021). Further, "[j]udicial economy weighs in favor of prompt resolution of the jurisdictional issue[]." *Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 107 n.3 (1st Cir. 2016). Doing so will head off future remand appeals under 28 U.S.C. § 1447(d) and permit the parties to "proceed to the merits in an appropriate venue." *Id.*; *see, e.g., Moore*, 25 F.4th at 36 (deciding whether additional requirements for federal officer jurisdiction not addressed by the district court were satisfied); *Express Scripts Pharm.*, 996 F.3d at 254 (same). 3M's removal notice plausibly alleged that the case relates to its supply of MilSpec AFFF to the military.

**1.     3M Plausibly Alleged That PFAS From AFFF And Non-AFFF Sources Have Commingled In Maine.**

A defendant removing a case on federal officer grounds must plausibly allege that the lawsuit is "for or relating to" the act taken under a federal officer or agency. 28 U.S.C. § 1442(a)(1). Establishing that a lawsuit is "for" an act performed under federal authority requires showing "a nexus, a causal connection" between the official act and the conduct alleged. *Acker*,

527 U.S. at 431 (quotation marks omitted). The "hurdle erected by this requirement is quite low." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

In 2011, Congress "lower[ed]" that hurdle even further by amending the federal officer removal statute. *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) (collecting cases); *see* Removal Clarification Act of 2011, § 2(b)(1)(A), 125 Stat. 545. As amended, the statute permits removal if the defendant plausibly alleges that the case is either "for *or relating to*" an act under a federal officer. 28 U.S.C. § 1442(a)(1) (emphasis added). As this Court observed, that amendment "broaden[ed] the universe of acts that enable . . . remov[al] to Federal court." *Moore*, 25 F.4th at 35 n.4 (quoting H.R. Rep. No. 112-17, at 6 (2011)). Federal officer removal thus is available in actions "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Baker*, 962 F.3d at 943 (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)); *see Moore*, 25 F.4th at 35 n.4 (similar).

Maine's claims are connected or associated with MilSpec AFFF. The complaint seeks damages for alleged PFAS contamination of natural resources "throughout Maine." A55, A68, A71 ¶¶ 70, 133, 142. 3M's removal notice explained that the alleged PFAS contamination of Maine's natural resources plausibly came from both MilSpec AFFF and non-AFFF sources. A20-24 ¶¶ 24-32. For instance, AFFF from five military facilities in Maine

36

plausibly seeped into groundwater and surface water and migrated from the military facilities into Maine's natural resources. A21-22 ¶ 28. AFFF from the military facilities also could have "plausibly migrated to off-site areas of sewage sludge application" or "plausibly was shipped off-site to nearby wastewater treatment plants and municipal landfills." A21-23 ¶¶ 28-29. And once the AFFF reached the ground and surface waters near military facilities, fields treated with sewage sludge, wastewater treatment plants, or landfills, it plausibly commingled with the non-AFFF PFAS at those locations. A10-11, A21-23 ¶¶ 2, 26-30.

In its remand motion, Maine argued that this case does not relate to MilSpec AFFF because 3M did not "identify Maine locations where commingling of its AFFF and non-AFFF contamination has *in fact* occurred." A231. But that is not the standard. A removal notice "need include only a plausible allegation" that the jurisdictional threshold is met. *Dart Cherokee Basin Operating,* 574 U.S. at 89. And those "[j]urisdictional allegations control unless it is legally impossible for them to be true." *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 814-15 (7th Cir. 2015).

As a result, 3M does not need to prove at this stage that PFAS from AFFF and non-AFFF sources have in fact commingled in Maine. 3M need only show that it is plausible that a factfinder will be tasked with distinguishing between AFFF and non-AFFF PFAS at the contamination sites at issue in this lawsuit. By alleging that MilSpec AFFF has migrated from

military facilities in Maine to elsewhere in the state, 3M has satisfied that standard, particularly in light of Maine's own allegations that PFAS "migrate[s] long distances through soil and groundwater" and that there has been extensive non-AFFF contamination "throughout" the state, including in "drinking water, groundwater, surface water, soil, [and] compost, sludge." A48, A50 Compl. ¶¶ 38, 50.

### 2. Maine's Disclaimer Did Not Sever The Connection Between This Case And MilSpec AFFF.

Maine's disclaimer that it is not seeking damages for AFFF contamination in this action also does not change the fact that this lawsuit is "relat[ed] to" MilSpec AFFF. 28 U.S.C. § 1442(a)(1).

To meet the removal statute's low bar, a defendant need allege only that the case is "*connected* or *associated*" with its federal act; the case and the act do not need to be "*causally* connected." *Baker*, 962 F.3d at 943. Even crediting Maine's disclaimer, for each allegedly contaminated site and natural resource at issue, it will be necessary to identify the sources of the PFAS contamination (if for no other reason than to eliminate AFFF as a source). The removal notice plausibly alleges that that will entail fact-intensive analysis regarding the supply, use, disposal, discharge, and movement of MilSpec AFFF. A21-23 ¶¶ 26-30. Because there is no way to resolve Maine's claims without that analysis, the case is "connected or associated"

with MilSpec AFFF. That easily clears the low bar set by Congress for the case to be "relat[ed] to" MilSpec AFFF. 28 U.S.C. § 1442(a)(1).

Other courts facing similar disclaimers agree. For example, as discussed above (at 21-22), the residents in *Baker v. Atlantic Richfield Co.* alleged that they were injured by chemicals produced by the defendant company but disclaimed damages for injuries caused by products that the company manufactured for the military. 962 F.3d at 945 n.3. The Seventh Circuit nevertheless held that the lawsuit "relate[d] to" the manufacture of those products because the factfinder still had to determine whether the products were the actual cause of the plaintiffs' injuries. *Id*. at 944-45. And the district court reached the same conclusion in *Nessel*, where Michigan sought to divide its claims between damages from commercial AFFF and damages from MilSpec AFFF. The court upheld removal of the commercial AFFF case because even there, the factfinder would have to engage in a "detailed fact-finding process" about the presence of MilSpec AFFF. *Nessel*, 2021 WL 744683, at *3.

The Court should not be persuaded by the contrary reasoning of the district court in *New Hampshire v. 3M Co.* There, New Hampshire disclaimed damages "related to the manufacture and use of AFFF." 2023 WL 2691376, at *3. The district court held that the lawsuit thus was not "relat[ed] to" MilSpec AFFF because there was "no scenario under which

39

3M could be found liable for any damages *caused by* AFFF" or "contamination *resulting from* its alleged supply of MilSpec AFFF." *Id*. at *8 (emphasis added). In other words, the district court demanded a "*causal*[] connect[ion]" between New Hampshire's alleged injury and MilSpec AFFF. *Baker*, 962 F.3d at 943. That was error. The pre-2011 removal standard for federal officer jurisdiction required a "causal connection" between the defendant's conduct at issue and "asserted official authority." *Acker*, 527 U.S. at 431 (quotation marks omitted). That "'causal link' standard . . . is far narrower than the proper standard under § 1442(a)(1), as amended in 2011," *Moore*, 25 F.4th at 34—which is whether the case is in any way "*connected* or *associated* . . . with acts under color of federal office," *Baker*, 962 F.3d at 943 (quotation marks omitted).

### 3. Adopting Maine's Construction Of Section 1442 Would Result In Duplicative Litigation.

Finally, Maine's construction of the removal statute "would give rise to wasteful, duplicative litigation" in state and federal courts. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006). It would incentivize plaintiffs to depart from the normal practice of asserting all of their claims in a single suit. Other State plaintiffs in PFAS suits (including in this Circuit) have observed that practice, which allows the multidistrict-litigation court to ensure consistency across decisions relating to AFFF contamination. *See, e.g.*, Compl. ¶ 5, *Wisconsin v. 3M Co.*, No. 23-cv-28 (D.S.C.

40

July 27, 2022), ECF No. 1-1; Compl. ¶ 99, *Rhode Island v. 3M Co.*, No. 23-3634 (D.S.C. July 10, 2023), ECF No. 1-1; Compl. ¶ 221, *People of the State of California v. 3M Co.*, No. 23-cv-1531 (D.S.C. Dec. 20, 2022), ECF No. 1-1.

Instead, plaintiffs would follow Maine's lead by filing multiple suits raising the same issues regarding the same natural resources. The result would be a proliferation of parallel state and federal cases that duplicate discovery and force companies to simultaneously defend identical claims in multiple forums. And unlike duplicative claims in federal courts (which can be consolidated, even if filed in different parts of the country, 28 U.S.C. § 1407(a); Fed. R. Civ. P. 42(a)), duplicative claims pending in state and federal courts cannot be consolidated, so the parties (and the respective court systems) would incur duplicative costs litigating the same case before different courts. The Court should not countenance that interpretation of the federal officer removal statute.

## CONCLUSION

The Court should reverse and remand with instructions that the district court recall its remand to the state court.

Dated: December 11, 2023

Respectfully submitted,

/s/ *Michael A. Scodro*

Michael A. Scodro
  1st Cir. Bar No. 1207763
Avi M. Kupfer
  1st Cir. Bar No. 1177771
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com

Jay S. Geller
  1st Cir. Bar No. 84040
LAW OFFICE OF JAY S. GELLER
Lunt Professional Building
74 Lunt Road, Suite 206
Falmouth, ME 04105
(207) 899-1477

Russell B. Pierce, Jr.
  1st Cir. Bar No. 46573
NORMAN HANSON
  & DETROY LLC
2 Canal Plaza
PO Box 4600
Portland, ME 04112-4600
(207) 775-0806

*Counsel for Appellant 3M Company*

42

**ADDENDUM**

# ADDENDUM TABLE OF CONTENTS

Order, *State of Maine v. 3M Co.*, 23-cv-00210 (D. Me. July. 26, 2023), ECF No. 47...............................................................Add. 1

28 U.S.C. § 1442 .....................................................................Add. 26

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STATE OF MAINE,                    )
                                   )
                    Plaintiff,     )
                                   )
        v.                         )        No. 2:23-cv-00210-JAW
                                   )
3M COMPANY, et al.                 )
                                   )
                    Defendants.    )

## ORDER ON MOTIONS TO REMAND AND STAY

Based on a state plaintiff's express and enforceable disclaimer against seeking recovery in this lawsuit from the defendants for claims relating to aqueous film-forming foam, the sole basis for federal jurisdiction, this Court concludes that it does not have jurisdiction over a parens patriae lawsuit against manufacturers of per- and polyfluoroalkyl substances and grants the state's motion to remand the case to state court. The Court declines to stay ruling on the motion to remand while the United States Judicial Panel on Multidistrict Litigation rules on a motion to transfer the case to a multidistrict litigation proceeding because the Court has determined that in any event, it does not have jurisdiction over the lawsuit.

## I.    BACKGROUND

### A.    Two Lawsuits

On March 29, 2023, the state of Maine (Maine or State) in its parens patriae[1] capacity filed two separate civil actions against 3M Company and other defendants

---

[1]      A parens patriae lawsuit "involves a matter of sovereign or quasi-sovereign interest and is brought by a state on behalf of all its citizens." *New Hampshire v. 3M Corporation*, No. 22-cv-145-LM,

(collectively 3M) in state of Maine Superior Court for Cumberland County. *Notice of Removal*, *State of Me. v. 3M Co.*, No. 2:23-cv-00197-JAW, Attach. 3, *Compl.*, (ECF No. 1) (*AFFF Compl.*), *id., State Ct. R.*, Attach. 1, *State Ct. Docket* (filed under state docket number PORSC-CV-2023-00122) (ECF No. 9); *Notice of Removal*, *State of Me. v. 3M Co.*, No. 2:23-cv-00210-JAW, Attach. 3, *Compl.*, (ECF No. 1) (*Non-AFFF Compl.*), *id., State Ct. R.*, Attach. 1, *State Ct. Docket* (filed under state docket number PORSC-CV-2023-00121) (ECF No. 15). Both lawsuits involve per- and polyfluoroalkyl substances (PFAS). But the first lawsuit — docket number 2:23-cv-00197-JAW — is directed to the use of aqueous film-forming foam, and the second lawsuit — docket number 2:23-cv-00210-JAW — is not. The parties refer to the two complaints as either the AFFF Complaint (2:23-cv-00197-JAW) or the Non-AFFF Complaint (2:23-cv-00210-JAW).

### B. The AFFF Complaint

Turning first to the AFFF Complaint, 3M removed the case from state to federal court on May 8, 2023. *Notice of Removal* (ECF No. 1). On May 24, 2023, the United States Judicial Panel on Multidistrict Litigation (JPML) issued a conditional transfer order, accepting the case as a tag-along action for transfer to the United States District Court for the District of South Carolina in *In re: Aqueous Film-Forming Foam Products Liability Litigation*, *MDL Conditional Transfer Order* (ECF No. 14) (MDL Litigation). On June 9, 2023, that order was certified, *id., MDL Conditional Transfer Order* (ECF No. 15), and the Clerk's Office electronically transferred the case to the MDL in United States District Court for the District of

---

2023 U.S. Dist. LEXIS 53461, at*3 n.1 (D.N.H. March 29, 2023) (citation and internal quotations omitted).

South Carolina. (ECF No. 16). The transfer of the AFFF Complaint to the District of South Carolina appears noncontroversial.

### C. The Non-AFFF Complaint

The same cannot be said for the Non-AFFF Complaint. On May 17, 2023, 3M removed the case to this Court. *Case No. 2:23-cv-00210-JAW, Notice of Removal* (ECF No. 1). On May 25, 2023, the State moved to remand the case to state of Maine Superior Court and for expedited briefing. *State of Me.'s Mot. to Remand* (ECF No. 10) (*Mot. to Remand*); *State of Me.'s Mot. for Expedited Briefing and Consideration of Mot. to Remand* (ECF No. 11). On June 1, 2023, the JPML declined to accept the Non-AFFF Complaint as part of the MDL Litigation. *Notice of Counsel* (ECF No. 18). On June 8, 2023, 3M filed a motion to stay the Non-AFFF litigation until the JPML resolves 3M's motion to transfer the Non-AFFF Litigation to the District of South Carolina for disposition with the MDL Litigation there. *Def. 3M Company's Mot. to Stay* (ECF No. 31) (*Mot. to Stay*). On June 15, 2023, 3M responded to the State's motion to remand and the State responded to 3M's motion to stay. *Def. 3M Company's Obj. to State of Me.'s Mot. to Remand* (ECF No. 34) (*3M Remand Opp'n*); *Pl.'s Opp'n to Def. 3M Company's Mot. to Stay* (ECF No. 35) (*State's Stay Opp'n*). On June 22, 2023, 3M filed a reply in support of its motion to stay and the State filed a reply in support of its motion to remand. *Def. 3M Company's Reply in Support of Mot. to Stay* (ECF No. 37) (*3M Stay Reply*); *State of Me.'s Reply in Support of Mot. to Remand* (ECF No. 38) (*State Remand Reply*).

### D. The Motions to Strike, File a Surreply, and Expedite Briefing

On June 27, 2023, 3M filed a motion to strike or, in the alternative, a motion for leave to file a surreply. *Def. 3M Company's Mot. to Strike Decl. and Portions of Pl.'s Reply in Support of Mot. to Remand or, in the Alternative, for Leave to File Surreply* (ECF No. 39) (*3M's Mot. to Strike*). On July 1, 2023, the State filed an opposition to the motion to strike or file surreply. *Pl. State of Me.'s Opp'n to Def. 3M Company's Mot. to Strike Decl. and Portions of Pl.'s Reply in Support of Mot. to Remand or, in the Alternative, for Leave to File Surreply* (ECF No. 41) (*State's Strike Opp'n*). On July 1, 2023, the State also filed a motion for expedited briefing and consideration of 3M's motion to strike or file surreply. *Pl. State of Me.'s Mot. for Expedited Briefing and Consideration of 3M's Mot. to Strike Decl. and Portions of Pl.'s Reply in Support of Mot. to Remand or, in the Alternative, for Leave to File Surreply* (ECF No. 42) (*State's Expedited Mot.*).

On July 5, 2023, the Court addressed and resolved a controversy between the parties concerning the motion to strike, the motion to stay, and the motion for expedited briefing. *Order on Mot. to Strike, Mot. to Stay, and Mot. for Expedited Briefing* (ECF No. 44). On July 12, 2023, 3M filed a surreply, *3M Co.'s Surreply in Opp'n to Mot. to Remand* (ECF No. 45) (*3M's Surreply*), and on July 17, 2023, the State filed a surrebuttal. *State of Maine's Rebuttal to Def. 3M Co.'s Surreply to State of Maine's Mot. to Remand* (ECF No. 46) (*State Surrebuttal*).

## II.    THE CONTROVERSY

In filing two lawsuits in state court, the State has attempted to make a "sharp distinction" between PFAS and AFFF contamination with one lawsuit devoted to

PFAS contamination and the other to AFFF contamination. *Mot. to Remand* at 5. By its drafting of the two complaints, the State has chosen a state court forum for its Non-AFFF complaint, while conceding the federal forum for its AFFF claims. *Id.*

In its opposition to the State's motion to remand, 3M contends that the "State's attempt to split its claims and plead around federal jurisdiction fails." *3M's Remand Opp'n* at 1. 3M explains that the AFFF claims fall within federal jurisdiction because AFFF was manufactured in compliance with specifications from the United States Military (MilSpec AFFF) and therefore are subject to federal officer jurisdiction. *Id.* 3M maintains that AFFF and Non-AFFF sources of contamination are commingled and at the very least, 3M has the right to also assert federal government contractor defenses to the Non-AFFF claims. *Id.* at 6. This dispute also provides the context for 3M's motion to stay in which 3M is asking the Court to delay disposition of the motion to remand until the JPML issues a ruling on whether the Non-AFFF lawsuit may be accepted into the MDL Litigation. *Mot. to Stay* at 1-14.

In its opposition to the motion to stay, the State attached a sworn declaration of Victoria Eleftheriou. *State's Stay Opp'n,* Attach. 1, *Decl. of Victoria Eleftheriou in Support of Pl.'s Opp'n to 3M Company's Mot. to Stay* (*Eleftheriou Decl.*). Ms. Eleftheriou, the Deputy Director of the Maine Department of Environmental Protection's Bureau of Remediation and Waste Management, essentially reviews the specific sites that are the subject of the Non-AFFF contamination litigation and represents that there is no evidence of AFFF contamination in those PFAS sites. *Id.* at 1-7.

This description sets the stage for the State's motion to remand and 3M's motion to stay, except to note that from the perspective of the State, there is some urgency. After June 1, 2023, when the JPML declined to accept transfer of the Non-AFFF lawsuit into the MDL Litigation, 3M moved for the JPML to accept the Non-AFFF lawsuit. *3M's Mot. to Stay* at 3-4. The parties later received notice that the JPML would hear 3M's transfer motion at its meeting on July 27, 2023. *3M Stay Reply,* Attach. 1, *JPML Notice of Hr'g Session* at 4. The State is very concerned that once 3M's motion to transfer is considered by the JPML, it will substantially delay the disposition of its motion to remand. *State Stay Opp'n* at 13. The State therefore has urged the Court to issue a ruling on the motion to remand before the JPML acts on 3M's motion to transfer and 3M has urged the Court to delay ruling on the motion to remand until the JPML has issued its ruling.

## III. THE POSITIONS OF THE PARTIES

### A. The Motion to Remand

#### 1. The State's Motion to Remand

On May 25, 2023, the State moved to remand this case to state of Maine Superior Court. *Mot. to Remand* at 5-15. First, the State stresses that it deliberately divided its civil actions between the AFFF and the Non-AFFF lawsuits. *Id.* at 5. The AFFF lawsuit is now subject to the MDL Litigation in South Carolina and the State nowhere argues that this transfer was improper. *Id.* at 5-15. By contrast, in its Non-AFFF lawsuit, the State expressly disclaimed "seeking relief for AFFF-related contamination: 'The State is not seeking to recover through this Complaint any relief

for contamination or injury related to Aqueous Film Forming Foam.'" *Id.* at 9 (quoting *Compl.* ¶ 15).

For the AFFF complaint, the State acknowledges that this Court may have jurisdiction under so-called "federal officer jurisdiction". *Id.* at 6. Federal officer jurisdiction can be a "colorable federal defense to [a] lawsuit," where there is a "nexus between the allegations in the complaint and conduct undertaken at the behest of a federal officer." *Id.* at 6-7 (quoting *Rhode Island v. Shell Oil Prod. Co.*, 979 F.3d 50, 59 (1st Cir. 2020), *vacated on other grounds* 141 S. Ct. 2666 (2021) (*Rhode Island I*)). However, the State contends that federal officer jurisdiction is not available for the Non-AFFF complaint. *Id.* at 6-7.

The State observes that to establish federal officer jurisdiction, 3M points to four sites — the Army National Guard facility in Bangor, the former Loring Air Force Base in Aroostook County, the former Brunswick Naval Air Station, and the Portsmouth Naval Shipyard — where 3M asserts that PFAS and AFFF were commingled. *Id.* at 7-8. But the State says that there is no evidence of commingling on any of these four sites. *Id.* Moreover, the State goes on to state that none of these four sites was identified in its Non-AFFF complaint. *Id.* at 8-9. In addition, the State reiterates that even if 3M could demonstrate commingling, the State disclaimed in this lawsuit any relief from the Non-AFFF complaint. *Id.* at 9. For support, the State points to two court decisions in the First Circuit: *New Hampshire v. 3M Corporation*, No. 22-cv-145-LM, 2023 U.S. Dist. LEXIS 53461 (D.N.H. Mar. 29, 2023) and *Rhode*

*Island I*, 979 F.3d 50. The State then distinguishes the cases it anticipated 3M would cite for support. *Id.* at 9-13.

There is a second possible source of federal jurisdiction — federal enclave jurisdiction. *Id.* at 14. The State anticipates that 3M will maintain that Portsmouth Naval Shipyard and the Brunswick Naval Air Station were federal enclaves, thereby affording federal jurisdiction. *Id.* But the State relies on a First Circuit case, *Rhode Island v. Shell Oil Products, Company*, 35 F.4th 44 (1st Cir. 2022) (*Rhode Island II*), to argue that federal enclave jurisdiction is not available to 3M. *Id.*

### 2.    3M's Opposition to Remand

3M begins its opposition by disputing the premise of the State's argument: namely, that PFS and AFFF sources of contamination can be neatly separated. *3M Remand Opp'n* at 5-6. Instead, 3M says that "PFAS can move through the environment — both from natural processes like transport in groundwater and because people collect, move and spread PFAS-containing waste — so PFAS from AFFF and non-AFFF sources plausibly have *commingled* at various locations." *Id.* at 6 (emphasis in original). 3M maintains that "MilSpec AFFF thus is at issue even in this putative 'non-AFFF' case for statewide damages." *Id.* 3M contends that AFFF was used in military sites throughout Maine and that the State alleged in its AFFF lawsuit that PFAS and AFFF contaminated sites throughout the state of Maine. *Id.* at 8-9. 3M relies particularly on *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 U.S. Dist. LEXIS 39175 (W.D. Mich. Jan. 6, 2021) and *In Re AFFF Products Liability Litigation*, No. 18-nm-2873, ECF No. 325 (D.S.C. Oct. 1, 2019). *Id.* at 10-11. 3M says

that the *New Hampshire* case was "wrongly decided" and notes that it is currently on appeal before the First Circuit. *Id.* at 6, n.3.

3M posits that the State's disclaimer of AFFF liability does not preclude federal jurisdiction. *Id.* at 13. This is because, 3M observes, the well-pleaded complaint rule does not apply to federal officer removal. *Id.* 3M then disputes the State's interpretation of relevant caselaw. *Id.* at 13-16.

Regarding federal enclave jurisdiction, 3M says that the State does not dispute that Brunswick Naval Air Station and Portsmouth Naval Shipyard were federal enclaves and used AFFF. *Id.* at 16. 3M argues that this Court therefore has supplemental jurisdiction over the state claims. *Id.* at 16-17.

### 3.     The State's Reply

In reply, the State contends that 3M's arguments in favor of federal jurisdiction are "conclusory, speculative and controverted by actual evidence." *State Remand Reply* at 5. The State analyzes each case 3M cited and maintains that they do not support 3M's contentions. *Id.* at 7-9. Discussing *Rhode Island II*, the State writes that this case does not support federal jurisdiction because all pertinent events did not take place on the federal enclaves. *Id.* at 10-11.

### 4.     3M's Surreply

In its surreply, 3M focuses on the sworn declaration of Victoria Eleftheriou (attached to the State's reply to the motion to stay), and argues that the Court should not consider her statements for three reasons: (1) because they are "legally irrelevant to whether 3M adequately alleged a plausible basis for federal officer jurisdiction in

its Notice of Removal," (2) even if the Court considered the Eleftheriou statements, they "do not address – much less controvert – most of the facts 3M averred in support of federal officer jurisdiction," and (3) it would be "error to order remand based on the Declaration without giving 3M a fair opportunity to contest it." *3M Surreply* at 1.

### 5. The State's Surrebuttal

In its surrebuttal, the State argues that 3M has conceded that the lawsuits involving two water districts, which were the subject of Deputy Director Eleftheriou's declaration, are irrelevant to the Court's remand determination. *State's Surrebuttal* at 8. But the State's overall response is that the Court does not need to consider the Eleftheriou declaration to rule on the motion to remand. *Id.* at 4. Finally, the State rejects 3M's discovery demand, pointing out that the Eleftheriou declaration's reference to the water districts is not mentioned in the 3M Notice of Removal and that 3M has not created a reasonable expectation that discovery would reveal facts relevant to the Court's remand decision. *Id.* at 10. The State ends by arguing that "3M does not want discovery, it wants delay." *Id.* at 11.

### B. The Motion to Stay

### 1. 3M's Motion to Stay

On June 8, 2023, 3M moved this Court to defer action on the State's motion to remand until the JPML has ruled on its motion for transfer. *3M's Stay Mot.* at 1-10. Quoting *Good v. Altria Group, Inc.*, 624 F. Supp. 2d 132 (D. Me. 2009), 3M points out that "[c]ourts frequently grant stays pending a decision by the [JPML] regarding whether to transfer a case." *Id.* at 5 (quoting *Good*, 624 F. Supp. 2d at 134). 3M notes

that if the JPML accepts the case for transfer, the MDL would have the authority to rule on the motion to remand, and a MDL ruling on the motion to remand would have the benefit of consistency and judicial economy.  *Id.* at 6.

3M then argues that this case would be a "good candidate for transfer" to the MDL.  *Id.*  3M observes that the State's other AFFF case has already been transferred to the MDL.  *Id.*  3M contends that the JPML has accepted transfer in other cases similar to Maine's Non-AFFF case on the ground that the same water sources were involved.  *Id.* at 6-7.

3M discounts any prejudice to the state of Maine by a stay.  *Id.* at 7-8.  3M notes that the JPML is scheduled to hear the motion for transfer on July 27, 2023,[2] and it asserts that the JPML typically issues a decision on a motion for transfer within a week or two of the hearing session.  *Id.*  By contrast, if this Court issues an order on the motion to remand, 3M raises the specter of inconsistent remand decisions, which it argues would greatly prejudice 3M.  *Id.*

## 2.    The State's Opposition to the Motion to Stay

The State strenuously objects to 3M's motion to stay.  *State Stay Opp'n* at 1-14.  The State's main point is that the JPML will not address the issue the State has raised: namely, whether federal jurisdiction is proper for this Court.  *Id.* at 5.  The State maintains that the JPML "reviews only whether, on the face of the various complaints, there is apparent overlap between a given complaint and an MDL."  *Id.*

---

[2]        At the filing of 3M's motion, it was unclear whether the JPML would hear the 3M motion for transfer on July 27, 2023 or September 28, 2023.  *3M Stay Mot.* at 8.  Since then, the JPML scheduled the motion for transfer without oral argument for the hearing session of July 27, 2023.  *3M Stay Reply*, Attach. 1, *JPML Notice of Hr'g Session* at 4.

The State contends that to allow the JPML to consider whether to accept this case would "needless delay the case even as the State urgently seeks to move it forward to obtain the funds needed to clean up Maine's environment." *Id.* The State says that "[i]n view of established principles of comity and federalism, subject mater jurisdiction can and should be decided at the very outset of the litigation, particularly in a case brought by the sovereign in its own state's court." *Id.*

### 3.    3M's Reply to the State's Stay Opposition

In its reply, 3M cites *Good* and other cases, in which courts have granted a stay to allow the JPML to rule on whether it would accept transfer into the MDL. *3M's Stay Reply* at 4-8. Alternatively, 3M argues that the analysis in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wisc. 2001) counsels against deciding the jurisdictional issue here because 3M views the jurisdictional issue as factually and legally complex. *Id.* at 8-9. 3M deflects any prejudice on the part of the State from a stay and requests that the Court defer decision until the JPML has decided the pending motion to transfer. *Id.* at 10.

## IV.    DISCUSSION

Preliminarily, this Court retains jurisdiction to consider the motion to remand: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." *Nessel*, 2021 U.S. Dist. LEXIS 39175, at *5-6 (quoting *JPML R.* 2.1(d)).

In analyzing the dueling motions to stay and remand, the Court is fortunate that it does not operate from a blank slate. First, the Court finds persuasive the "three-step methodology" for "balance[ing] the imperative of ensuring federal jurisdiction and the benefits of multidistrict litigation" announced in *Meyers*, 143 F. Supp. 2d at 1049 and recently applied in the District of Maine in *Eastern Maine Medical Center v. Teva Pharmaceuticals USA Inc.*, 581 F. Supp. 3d 281, 285-86 (D. Me. 2022). The Court adopts Chief Judge Levy's observation that "[t]his three-step approach appropriately accommodates the fundamentality of subject-matter jurisdiction within the federal system and the virtues of judicial economy, efficiency, and consistency promoted by multidistrict litigation." *Id.* In *Eastern Maine*, quoting *Meyers*, Chief Judge Levy described the three-step methodology:

> First, if a "preliminary assessment suggests that removal was improper, the court should promptly . . . remand the case to state court." *Meyers*, 143 F. Supp. 2d at 1049. But if the preliminary assessment instead reveals that the jurisdictional issue is "factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the" multidistrict litigation. *Id.* If so, "the court proceed[s] to the third step and consider[s] the motion to stay," although this third step "does not mandate that a stay should be granted." *Id.*

*E. Maine*, 581 F. Supp. 3d at 285. In accordance with the first step of the three-step methodology, the Court turns first to the motion to remand and next addresses the motion for stay. Next, in addressing the first step of the *Meyers* analysis, the Court has the benefit of a recent decision on a similar question authored by Chief Judge Landya McCafferty of the District of New Hampshire in *New Hampshire*, 2023 U.S.

Dist. LEXIS 53461, at *1-28, a case currently on appeal to the Court of Appeals for the First Circuit.

### A.    Motion to Remand

In the two state of Maine complaints, the State has sought to proceed on two distinct factual and legal theories: an AFFF lawsuit, which it concedes has been properly transferred to the MDL, and a Non-AFFF lawsuit, which it contends is not subject to federal jurisdiction.  In a typical case, the State as plaintiff is the "master" of its complaint.  *The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25 (1913) (Holmes, J.).  This precept known as the "well-pleaded complaint rule" concentrates a court's attention "on the complaint's terms" and its analysis is "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Rhode Island II*, 35 F.4th at 51 (citing *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)).  Based on this precept alone, the State's position on remand would be unassailable because the State-drafted complaints carefully differentiate between the AFFF and Non-AFFF lawsuits, and the Non-AFFF complaint, especially given its disavowal of any AFFF claim, would be appropriate for remand.  *See New Hampshire*, 2023 U.S. Dist. LEXIS 53461, at *28 ("[I]n most circumstances, the non-federal cast of a complaint would prevent a defendant from removing it"); *Rhode Island II*, 35 F.4th at 51.  Thus, to the extent 3M purports to remove this case to federal court pursuant to 28 U.S.C. § 1441, *see Notice of Removal* at 1 ("Defendant 3M Company [3M] by undersigned counsel hereby gives notice of removal of this action, pursuant

to 28 U.S.C. §§ 1331, 1441, 1442(a)(1), and 1446"), a straightforward review of the Non-AFFF complaint would dictate remand.

But federal jurisdictional law is seldom so simple. As a basis for removal, 3M also invokes § 1442(a)(1), the federal officer removal statute. In 1999, the United States Supreme Court wrote:

> To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908). Suits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law.

*Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430-31 (1999). Since *Jefferson County*, Congress broadened the application of the federal officer removal statute to include cases where there is only a connection or association between the act in question and the federal office. *See Sawyer v. Forster Wheeler*, 860 F.3d 249, 258 (4th Cir. 2017).[3]

Judge McCafferty explained the nexus requirement:

The requirement that a claim be "for" or "relate to" the alleged federal authority is a "nexus" requirement, but not a causation requirement. *Moore* [*v. Elec. Boat Corp.*,] 25 F.4th [30,] 34 & n.2 [1st Cir. 2022]. That is, only a "nexus" between the claims and the alleged official authority

---

[3]     In *Sawyer v. Foster Wheeler, LLC*, 860 F.3d 249 (4th Cir. 2017), the Fourth Circuit observed that before 2011, the statutory test in § 1442 was whether "there was a causal connection between the charged conduct and the asserted official authority." *Id.* at 258 (quoting *Jefferson Cnty.*, 527 U.S. at 431). However, in 2011, Congress broadened § 1442(a)(1) to cover actions "for *or relating to* any act under color of [federal] office," adding the words "or relating to" Removal Clarification Act of 2011, Publ. L. No. 112-51, 125 Stat. 545. *Id.* (emphasis in *Sawyer*). This new language "broaden[ed] the universe of acts" that enable federal removal, H.R. Rep. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425, such that there need be only "'a *connection or association* between the act in question and the federal office.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016) (emphasis added) (quoting *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Assoc.*, 790 F.3d 457, 471 (3d Cir. 2015)).

need exist; it is sufficient that at least one of the plaintiff's claims is "connected" or "associated" with the defendant's acts under color of federal office. *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 943-44 (7th Cir. 2020) (explaining that 2011 amendments to § 1442(a)(1) removed requirement of causal connection and collecting appellate cases holding likewise).

*New Hampshire*, 2023 U.S. Dist. LEXIS 53461, at *21-22.

Applying this precedent, the Court turns to whether there is a connection or association between the allegations in the Non-AFFF lawsuit and a federal office. The Court briefly returns to the legal standards. In *Rhode Island I*, the First Circuit described the standard:

> Private actors sued in state court can remove the case to federal court where the private actor is "acting under [any federal officer], for any act under color of such office." 28 U.S.C. § 1442(a)(1); *accord Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989). "Acting under" connotes "subjection, guidance, or control" and involves "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Phillip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007) (citations omitted).

979 F.3d at 59. The *Rhode Island I* Court went on to state:

> To succeed in their argument that federal-officer removal is proper in this case, the oil companies must show that they were acting under a federal officer's authority, that they will assert a colorable federal defense to the suit, and that there exists "a nexus" between the allegations in the complaint and conduct undertaken at the behest of a federal officer. *Jefferson Cty.*, 527 U.S. at 431 (internal quotation marks and citations omitted). If the oil companies cannot demonstrate all three of these elements, they cannot remove the case to federal court under § 1442.

*Id.* As Chief Judge McCaffrey noted, unlike a § 1441 removal, a removal under § 1442(a)(1) "is broadly construed 'in favor of <u>removal</u>.'" *New Hampshire*, 2023 U.S. Dist. LEXIS 53461, at *21 (citing *Watson*, 551 U.S. at 147-48 (emphasis in *New*

*Hampshire*). This is because "[o]ne of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in federal court." *Id.* (quoting *Willingham v. Morgan,* 395 U.S. 402, 406 (1969)). At the same time, 3M "bears the burden under § 1442(a)(1)." *Moore*, 25 F.4th at 34.

In its Non-AFFF complaint against 3M, the State has made it plain that it is "not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS." *Non-AFFF Compl.* ¶ 15. In addition to this allegation in the Non-AFFF Complaint, the State has represented in its filings that "[i]f it does turn out that contamination in *any* particular site or location is related to AFFF, then the State has disclaimed seeking a recovery in this action for that site or location." *State's Remand Mot.* at 9 (emphasis in original).

Despite the State's disclaimer and the State's second AFFF lawsuit, 3M maintains that this Court should retain this case under its federal officer jurisdiction. *3M's Remand Opp'n* at 1-17. 3M first observes that PFAS can "move through the environment—both from natural processes like transport in groundwater and because people collect, move, and spread PFAS-containing waste—so PFAS from AFFF and non-AFFF sources plausibly have *commingled* at various locations." *Id.* at 6 (emphasis in original). If so, 3M says that it "has the right to defend itself by raising the issue of whether alleged 'non-AFFF' PFAS contamination may actually derive from MilSpec AFFF, and by asserting its federal government contractor defense as to any claimed damaged from MilSpec AFFF." *Id.* Next, 3M argues that it properly

removed the case based on "federal enclave jurisdiction" because "PFAS from AFFF and non-AFFF products plausibly were released from military bases in Maine that are federal enclaves." *Id.*

In support of its position, 3M points to four and sometimes five military facilities throughout the state of Maine, Brunswick Naval Air Station, Portsmouth Naval Shipyard, Loring Air Force Base, Bangor Air National Guard Base, and the Cutler Naval Air Station, that the State claims in its AFFF Complaint caused PFAS contamination in groundwater "*throughout the State*." *Id.* at 4 (quoting *AFFF Compl.* ¶ 224) (emphasis in *3M Remand Opp'n*); *see Notice of Removal* at 10.

Although the parties fence about seepage of AFFF contamination in specific instances, such as military installations and water districts, the determinative question rests on the interplay between the asserted federal affirmative defense and a motion to remand. In *Jefferson County*, the Supreme Court addressed how a district court is to approach the assertion of an affirmative defense as the basis for federal jurisdiction. 527 U.S. at 431. The *Jefferson County* Court required that the affirmative defense be "colorable," *id.*, and noted that courts should not construe the federal defense requirement with a "narrow, grudging interpretation" because "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Id.* (quoting *Willingham*, 395 U.S. at 407). Thus, as the Supreme Court observed in *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006), "[t]he federal officer removal statue allows 'suits against federal officer [to] be removed despite the nonfederal cast of the complaint,' *id.* at 645 n.9, (quoting

*Jefferson Cnty.*, 527 U.S. at 431), and reflects a congressional policy that 'federal officers, and indeed the Federal Government itself, require the protection of a federal forum.'" *Id.* (quoting *Willingham*, 395 U.S. at 407).

Although the First Circuit has not used this term, courts sometimes describe the burden on the removing party as making a "plausible" claim of federal officer defense. *See Graves v. 3MCo.*, 17 F.4th 764, 771 (8th Cir. 2021) ("For a defense to be considered colorable, it need only be plausible") (citation omitted); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

Applying these principles to AFFF and Non-AFFF litigation, the district courts in *New Hampshire* and *Nessel* reached different conclusions. As here, in *Nessel*, the state of Michigan attempted to strictly divide two lawsuits—one AFFF and the other Non-AFFF—but the district court rejected the distinction, noting that "Plaintiffs cannot decide what defense Defendants might present." *Nessel*, 2021 U.S. Dist. LEXIS 39175, at *10. The *Nessel* Court wrote that "while Plaintiffs attempt to surgically divide their complaints between Commercial and MilSpec AFFF, they cannot prevent Defendants from raising the production of MilSPec AFFF as a defense or an alternative theory, particularly when *Plaintiffs admit* that Defendants produced MilSpec AFF and that PFAS from AFFF spread contamination throughout the state." *Id.* The district court concluded that "Plaintiffs' artful pleading does not obviate the facts on the ground." *Id.* at *10-11.

Against *Nessel* is *New Hampshire.* In *New Hampshire*, the district court focused on the "specific limitations on the scope of [the] plaintiff's claims" and concluded that these limitations "eliminate a potential relationship between the plaintiff's claims and a defendant's federal acts." 2023 U.S. Dist. LEXIS 53461, at *22. The district judge noted two other cases, where district courts honored similar disclaimers. *Id.* at *22-24 (citing *Hayden v. 3M*, No. 15-2275, 2015 U.S. Dist. LEXIS 104534, at *3-4 (E.D. La. Aug. 10, 2015); *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2016) (stating that federal courts have "consistently" granted motions to remand in cases where the plaintiff expressly disclaims recovery for claims on which federal removal is based)). The *New Hampshire* Court distinguished *Nessel* on the ground that *Nessel* involved "two different kinds of AFFF'", whereas *New Hampshire* addressed, as here, AFFF and Non-AFFF contamination. *Id.* at *26-27 ("Here, unlike *Nessel*, whether an alternative source of contamination was MilSpec AFFF is irrelevant because this suit does not involve AFFF, regardless of whether it is MilSpec of another version of AFFF").

Finally, the district judge in *New Hampshire* did not find "the reasoning of *Nessel* persuasive." *Id.* The judge explained:

> If the sources of contamination <u>cannot</u> be distinguished, 3M cannot be held liable. That is, the State will fail to establish its own case, which is premised on the existence of contamination from some non-AFFF source. And, if a factfinder can distinguish the sources of contamination, 3M will prevail to the extent the factfinder determines contamination came from AFFF. This is true regardless of whether 3M supplied the AFFF under federal authority or warned the government about its dangers.

*Id.* (emphasis in original).

On balance, the Court concludes that *New Hampshire* is more persuasive.  In *Batchelor*, the district court observed that "Federal courts addressing disclaimer provisions in similar actions have 'recognize[d] a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the ground for removal under Section 1442(a)(1).'"  *Batchelor*, 185 F. Supp. 3d at 1363 (quoting *Siders v. 20th Century Glove Corp. of Texas*, No. 2:15-cv-13278, 2016 U.S. Dist. LEXIS 57210, at *25 (S.D.W.V. Apr. 29, 2016) (quoting *Dougherty v. A O Smith Corp.*, Civil Action No. 13-1972-SLR-SRF, 2014 U.S. Dist. LEXIS 96290, at *36 (D. Del. July 16, 2014)); *Kelleher v. A.W. Chesterton Co.*, No. 15-cv-893, SMY-SCW, 2015 U.S. Dist. LEXIS 159783, at *13 (S.D. Ill. Nov. 23, 2015); *Madden v. A.H. Voss Co.*, No. C 09-03786 JSW, 2009 U.S. Dist. LEXIS 24792, at *2-3 (N.D. Cal. Oct. 21, 2009).  Here, the State's disclaimer is express, unambiguous, and plain, and in the Court's view, fits within the category of express disclaimers courts have found effective to justify a remand order.  *Dougherty*, 2014 U.S. Dist. LEXIS 96290, at *36 (Where express disclaimers are made, "federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based").

Furthermore, as Chief Judge McCafferty pointed out, by its disclaimer, the State has taken upon itself the burden as part of its case to demonstrate that the source of contamination in its Non-AFFF lawsuit is not a AFFF source.  If the factfinder concludes that the State has failed to meet its burden concerning the source, 3M will prevail.  This effectively means that the federal officer defense will

not be applicable in the State's Non-AFFF lawsuit because the State by its express disclaimer has imposed upon itself a burden to demonstrate that its claim involves Non-AFFF sources. *Kelleher*, 2015 U.S. Dist. LEXIS 159783, at *11 ("Here, however, Plaintiff's waiver has rendered any federal defenses moot").

In sum, because of the State's express disclaimer, the Court concludes that this case must be remanded to the state of Maine Superior Court since the federal officer defense is not applicable.

Finally, the Court concludes that federal enclave jurisdiction does not plausibly exist because "the doctrine of federal enclave jurisdiction generally requires that *all* pertinent events take place on a federal enclave." *Rhode Island II*, 35 F.4th at 58 (emphasis in original). 3M suggests that the Court could assume jurisdiction under federal enclave jurisdiction over one site and then "exercise supplemental jurisdiction . . . arising from other sites." *3M's Remand Opp'n* at 17. But even if Brunswick Naval Air Station and Portsmouth Naval Shipyard could fit within federal enclave jurisdiction, the State has disclaimed any AFFF claims, including those arising from a federal enclave, so the argument circles back to the State's disclaimer.

In sum, because of the State's express disclaimer, the Court concludes that this case must be remanded to the state of Maine Superior Court since the federal officer defense is not applicable.

**B.    Motion to Stay**

Despite this conclusion, the Court addresses why it resolved this issue before the JPML acted on the motion for transfer and not stay resolution to give the JPML

an opportunity to decide for itself whether to accept this case as part of the MDL. Federal courts "possess the inherent power to stay [a case] for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). In evaluating whether to issue a stay, a court will generally consider three factors: "(1) potential prejudice to the non-moving party, (2) hardship and inequity to the moving party without a stay, and (3) judicial economy." *Good*, 624 F. Supp. 2d at 134. "The party seeking the stay bears the burden of demonstrating that a stay is appropriate." *Maine v. Wheeler*, No. 1:14-cv-00264-JDL, 2020 U.S. Dist. LEXIS 12334, at *8-9 (D. Me. Jan. 6, 2020). Whether to stay a proceeding in anticipation of a transfer ruling from the JPML rests within a court's discretion. *City of Portland v. Pardue Pharma, LP*, No. 2:18-cv-282-NT, 1:18-cv-298-NT, 2:18-cv-310-NT; 2018 U.S. Dist. LEXIS 201070, at *16 (D. Me. Nov.18, 2018); *Good*, 624 F. Supp. 2d at 134.

Here, applying *Eastern Maine*, the Court's "preliminary assessment suggests that removal was improper," and therefore, "the court should promptly . . . remand the case to state court." *E. Maine*, 581 F. Supp. 3d at 285 (quoting *Meyers*, 143 F. Supp. 2d at 1049). "Generally, motions to remand should be resolved before the panel acts on the motion to transfer so the federal court can assure itself of jurisdiction before the case transfers to the MDL." *Nessel*, 2021 U.S. Dist. LEXIS 39175, at *6.

In addition, although the JPML analysis of whether to accept a case for MDL transfer is similar to this Court's jurisdictional inquiry, they are not the same. The JPML's MDL Transfer Order filed on December 7, 2018, stated that "[a]ll of the actions on Schedule A involve allegations that aqueous film-forming foams (AFFFs,

which are used to extinguish liquid fuel fires) contaminated the groundwater near certain airports and other industrial locations with perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA), which allegedly were contained in the AFFFs and are toxic." *In re Aqueous Film-Forming Foams Products Liability Litig.*, No. 2:18-mn-02873-RMG, *Transfer Order* at 1 (ECF No. 1). The JPML concluded that "the AFFF actions listed on Schedule A involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *Id.* at 3.

When considering whether to grant a motion to transfer a case to an MDL, the standard is found in 28 U.S.C. § 1407, the statute authorizing multi-district litigation. Section 1407 provides that the JPML shall transfer a case to an MDL "upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*, *see e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (JPML Dec. 6. 2017) ("On the basis of the papers filed and the hearing session held, we find that centralization under Section 1407 in the Norther District of Ohio will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation").

As described here, the jurisdictional issue before this Court does not address the § 1407 standards, but whether the Court should assume jurisdiction over the case in the first place. Thus, even if the Court were to stay this matter to allow the JPML

to determine whether it is an appropriate MDL case, the jurisdiction question in this case would not be answered by the JPML.

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "The federal courts are under an independent obligation to examine their own jurisdiction . . .." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). In reaching and resolving the jurisdictional question, this Court is acting in accordance with its independent obligation to assure that its jurisdiction over this lawsuit is proper.

Finally, as a practical matter, the Court of Appeals for the First Circuit will resolve 3M's appeal in *New Hampshire* and its resolution may well inform the proper disposition of this case, thus any potential prejudice to 3M is mitigated by the fact that it is currently before the First Circuit on a virtually identical issue and ruling.

## V. CONCLUSION

The Court GRANTS the Plaintiff State of Maine's Motion to Remand (ECF No. 10) and DENIES Defendant 3M Company's Motion to Stay (ECF No. 31). The Court REMANDS this case to the State of Maine Superior Court for Cumberland County.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2023

28 U.S.C. § 1442 provides:

**Federal officers or agencies sued or prosecuted**

(a)  A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1)  The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

(2)  A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3)  Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

(4)  Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

(b)  A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

(c)  Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer--

(1)  protected an individual in the presence of the officer from a crime of violence;

(2)  provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

(3)  prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d)  In this section, the following definitions apply:

(1)  The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

(2)  The term "crime of violence" has the meaning given that term in section 16 of title 18.

(3)  The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

(4)  The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

(5)  The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6)  The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Rule 29(a)(5) because it contains 9,620 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: December 11, 2023                    /s/ *Michael A. Scodro*
                                            Michael A. Scodro

## CERTIFICATE OF SERVICE

I certify that on this 11th day of December, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ *Michael A. Scodro*
Michael A. Scodro