No. 23-1709

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

STATE OF MAINE,

*Plaintiff-Appellee,*

v.

3M COMPANY,

*Defendant-Appellant,*

E.I. DUPONT DE NEMOURS & COMPANY, f/k/a E.I. Dupont
De Nemours & Company; CHEMOURS COMPANY; CORTEVA, INC.;
DUPONT DE NEMOURS, INC.; DOW INC.,
CHEMOURS COMPANY FC, LLC,

*Defendants.*

On Appeal from the United States District Court for the
District of Maine, No. 2:23-cv-00210 (Hon. John A. Woodcock, Jr.)

### REPLY BRIEF OF APPELLANT 3M COMPANY

Jay S. Geller
LAW OFFICE OF JAY S. GELLER
Lunt Professional Building
74 Lunt Road, Suite 206
Falmouth, ME 04105
(207) 899-1477

Russell B. Pierce, Jr.
NORMAN HANSON
  & DETROY LLC
2 Canal Plaza
PO Box 4600
Portland, ME 04112-4600
(207) 775-0806

Michael A. Scodro
Gary A. Isaac
Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com

Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000

*Counsel for Appellant 3M Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................2

THE DISTRICT COURT HAS JURISDICTION UNDER THE
FEDERAL OFFICER REMOVAL STATUTE. ...................................2

   A.   3M Satisfies The Removal Requirements Notwithstanding
       Maine's Putative AFFF Disclaimer. ......................................3

       1.   The Putative Disclaimer Does Not Undermine 3M's
           Colorable Government Contractor Defense. ...........................4

       2.   The Putative Disclaimer Does Not Sever The Case's
           Relation To 3M's Manufacture Of MilSpec AFFF. ..................9

   B.   Maine's Factual Attack On The Removal Allegations Fails. .......12

       1.   The Court Should Not Resolve Maine's Factual Attack
           At The Removal Stage. ........................................................13

       2.   Maine Fails To Rebut 3M's Showing That PFAS From
           MilSpec AFFF And Non-AFFF Sources Plausibly
           Commingled. .....................................................................16

          i.   Maine's case is not limited to specific sites named
               in the complaint. .........................................................17

          ii.   3M's removal notice presented evidence of
               commingled PFAS resulting from MilSpec AFFF
               releases. .....................................................................19

          iii.   Maine's declaration does not undermine any of
               3M's removal allegations. ..............................................25

   C.   Maine's Policy Arguments Misconstrue Federal Officer
       Removal. .........................................................................26

CONCLUSION ................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baker v. Atlantic Richfield*,
  962 F.3d 937 (7th Cir. 2020) ................................................................ 6

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) ........................................................... 10, 11

*Cuomo v. Crane Co.*,
  771 F.3d 113 (2d Cir. 2014) .......................................................... 14, 15

*Curiale v. A. Clemente, Inc.*,
  2023 WL 4362722 (D.N.J. July 5, 2023) ......................................... 6, 7

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016) ................................................................ 13

*Gentek Bldg. Prods., Inc. v. Sherwin Williams Co.*,
  491 F.3d 320 (6th Cir. 2007) .............................................................. 13

*Grosch v. Tyco Fire Prods. LP*,
  2023 WL 5993548 (D. Ariz. Sept. 15, 2023) ....................................... 8

*Hayden v. 3M Co.*,
  2015 WL 4730741 (E.D. La. Aug. 10, 2015) ........................................ 8

*Illinois v. 3M Co.*,
  2023 WL 6160610 (C.D. Ill. Sept. 21, 2023) ........................... 8, 11, 12

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) .............................................................. 13

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir. 1990) .......................................................... 14

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ............................................................ 14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Macera v. Mortg. Elec. Registration Sys., Inc.*,
  719 F.3d 46 (1st Cir. 2013) ................................................................ 16

*Marley v. Elliot Turbomachinery Co.*,
  545 F. Supp. 2d 1266 (S.D. Fla. 2008) .......................................... 6, 7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) .......................................................................... 8, 9

*Moore v. Elec. Boat Corp.*,
  25 F.4th 30 (1st Cir. 2022) .................................................................. 9

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) .......................................................... 13

*Nessel v. Chemguard, Inc.*,
  2021 WL 744683 (W.D. Mich. Jan. 6, 2021) .................................. 7, 8

*New Hampshire v. 3M Co.*,
  665 F. Supp. 3d 215 (D.N.H. 2023) .............................................. 11, 12

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
  37 F. 4th 1013 (5th Cir. 2022) ......................................................... 14

*Rhode Island v. Shell Oil Prods. Co.*,
  979 F.3d 50 (1st Cir. 2020) ............................................................... 10

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .......................................................... 14

*St. Charles Surgical Hosp., LLC v. La. Health Serv. &
  Indem. Co.*,
  990 F.3d 447 (5th Cir. 2021) ............................................................. 11

*United States v. North Carolina*,
  180 F.3d 574 (4th Cir. 1999) ......................................................... 13, 14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. Quirós-Morales,*
   83 F.4th 79 (1st Cir. 2023) .................................................. 16

*Watson v. Philip Morris Cos.,*
   551 U.S. 142 (2007) ........................................................... 26

*Williamson v. Tucker,*
   645 F.2d 404 (5th Cir. 1981) ............................................. 14

**Statute**

28 U.S.C. § 1442(a)(1) ...................................................... 9, 27

**Other Authorities**

AECOM, *Final Preliminary Assessment Report, Bangor*
   *Training Site, Bangor, Maine* (Jan. 2020) ................................. 19, 20

AECOM, *Final Preliminary Assessment Report Brunswick*
   *Armed Forces Reserve Center, Maine* (Nov. 2019) ....................... 22, 23

Vivien Leigh, *Private Wells in Kittery Tested for PFAS*, News
   Ctr. Maine (Dec. 20, 2021) ................................................ 24

Maine Dep't of Env't Prot., *Maine DEP PFAS Investigation* ................. 23

Maine Dep't of Env't Prot., *PFAS Residential Sampling and*
   *Analysis Plan for the Kittery Municipal Landfill Site,*
   *Kittery, Maine* (Dec. 2021) ................................................ 24

Wood Programs, Inc., *Remedial Investigation Work Plan,*
   *Per- And Polyfluoroalkyl Substance Response, Former*
   *Loring Air Force Base, Limestone, Maine* (April 2022) ............... 21, 22

## INTRODUCTION

Maine hoped to insulate this case from federal-court review by splitting its claims alleging statewide contamination of its natural resources into two near-identical suits based on different products that contain the same PFAS chemicals. But that ploy cannot defeat federal officer jurisdiction. Notwithstanding Maine's AFFF disclaimer, 3M has a colorable government contractor defense, which it will invoke to contest causation and joint-and-several liability. Further, this case will involve complex factual questions about whether PFAS from MilSpec AFFF and non-AFFF sources are commingled in any of the at-issue natural resources. As multiple courts have concluded in similar circumstances, a federal court should be the one to resolve those difficult questions. Maine does not meaningfully engage with those authorities.

Rather, Maine attempts to shift the focus on appeal to an issue the district court never addressed—whether Maine presented sufficient evidence in the court below to rebut 3M's detailed removal allegations and supporting evidence that PFAS from MilSpec AFFF and non-AFFF sources may have commingled in at least some of the at-issue natural resources. But at the removal stage, courts do not resolve factual questions when those questions are intertwined with the merits. Moreover, any factual determinations should be made by the district court in the first instance.

Regardless, none of Maine's assertions undermines 3M's allegations and supporting evidence about commingled PFAS. Maine repeatedly argues that the sites where 3M has alleged commingling are not named in the complaint. But Maine seeks redress for alleged injuries to *all* of its natural resources statewide from PFAS that came from non-AFFF sources—not only for contamination of locations named in the complaint—and it alleges that PFAS are "widespread" and "ubiquitous" in the State. A38 ¶1. Further, the removal notice explained in detail with supporting evidence that PFAS from MilSpec AFFF used at specific military facilities and PFAS from non-AFFF sources may be commingled in natural resources for which Maine seeks damages. None of the evidence that Maine presented in response undermines those allegations.

Because Maine's complaint puts at issue the alleged contamination of all its natural resources, and because 3M intends to defend itself by demonstrating that at least some of the PFAS came from MilSpec AFFF, this case belongs in federal court. The Court should reverse the district court's remand order.

## ARGUMENT

## THE DISTRICT COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

Maine contends that its putative disclaimer of AFFF-related damages defeats federal officer jurisdiction as a matter of law. It also challenges 3M's

removal allegations that PFAS from MilSpec AFFF and non-AFFF sources may have commingled. Both arguments fail.

### A.    3M Satisfies The Removal Requirements Notwithstanding Maine's Putative AFFF Disclaimer.

3M satisfies the three requirements for federal officer removal—it acted under a federal officer when it produced MilSpec AFFF; it has a colorable government contractor defense; and the case relates to its supply of MilSpec AFFF. 3M Br. 17-40. Maine's primary response (Br. 16-25) echoes the district court's erroneous holding that the AFFF disclaimer obviates the need for 3M to assert a federal defense and severs the case's connection to AFFF. Not so. 3M will assert its government contractor defense to show that at least some of the alleged PFAS in the at-issue natural resources came from MilSpec AFFF and in response to any attempt to hold 3M jointly and severally liable. Further, the case relates to MilSpec AFFF notwithstanding the disclaimer. The removing defendant is not required to allege a causal link between the alleged injury and an act taken under a federal officer. Any connection or association is sufficient, and 3M easily satisfies that requirement since this case will involve complex factual questions about whether any alleged PFAS in the at-issue natural resources is from MilSpec AFFF.

## 1. The Putative Disclaimer Does Not Undermine 3M's Colorable Government Contractor Defense.

3M will raise a government contractor defense when litigating the sources of the alleged PFAS in Maine's natural resources and when contesting joint-and-several liability for the cost of remediating any natural resources with PFAS from both MilSpec AFFF and non-AFFF sources. 3M Br. 20-30. Maine's responses fail to show otherwise.

Maine chiefly asserts (Br. 21, 24-25) that 3M will have no need for a government contractor defense if Maine "fails to prove" that the PFAS "came from a non-AFFF source." That argument misses the point. All agree that given its disclaimer, Maine may recover damages only for alleged PFAS from non-AFFF sources. *See* Add. 21. But 3M nonetheless may assert a federal defense in several circumstances. *See* 3M Br. 20-30. For example, 3M may seek to show on summary judgment or at trial that a portion of the alleged PFAS in certain natural resources came from MilSpec AFFF. Courts have held that a defendant raises a government contractor defense when it argues that the alleged contamination was caused in part by products manufactured for the federal government. *See id.* at 21-24. Maine cannot prevent 3M from raising those causation arguments, which are part and parcel of its government contractor defense. *Id.* at 20-21.

Nor does Maine offer any response to 3M's argument (Br. 24-30) that 3M is entitled to raise a government contractor defense if Maine attempts

to hold it jointly and severally liable for the entire remediation cost for any natural resource containing PFAS from both MilSpec AFFF and non-AFFF sources. Maine repeats the undisputed statement that it must "prove" that the PFAS "is from non-AFFF sources." Br. 25. But that ignores the critical question—whether 3M will raise its government contractor defense if Maine pursues joint-and-several liability with respect to commingled PFAS. As discussed, 3M will raise the defense in that situation. 3M Br. 24-30. Maine does not engage with that argument.

Maine states in a footnote that it is "excluding" from this case "any PFAS site that has commingled AFFF and non-AFFF PFAS," "subject to this Court's ruling" in another pending appeal, *New Hampshire v. 3M*, 23-1362 (1st Cir.) (oral argument held Oct. 2, 2023). Br. 25 n.14. Maine does not elaborate on how a decision in a separate appeal with a different plaintiff could control the scope of Maine's complaint. Regardless, Maine does not rebut 3M's argument about joint-and-several liability. In fact, the footnote leaves open the possibility that Maine will pursue joint-and-several liability for natural resources with commingled PFAS if a decision in *New Hampshire* allows it to do so. And that would be consistent with the repeated assertion in Maine's complaint that its alleged injuries are "indivisible." A94 ¶255, A95 ¶261, A99 ¶284, A102 ¶296, A104 ¶308, A107 ¶321.

As discussed, if Maine seeks to hold 3M jointly and severally liable, 3M will assert its government contractor defense. A federal court should

decide whether and to what extent Maine's joint-and-several liability regime applies in the face of a government contractor defense. 3M Br. 26.

Maine fares no better in attempting (Br. 21-23) to distinguish decisions rejecting efforts to defeat federal officer jurisdiction through disclaimers. For example, the Seventh Circuit squarely held in *Baker v. Atlantic Richfield*, 962 F.3d 937 (7th Cir. 2020), that "a federal court should . . . resolve" the "difficult causation question" of whether alleged natural-resource contamination arose in part from products the defendant supplied to the military. *Id.* at 945 n.3; *see* 3M Br. 21-22, 39-40.

Maine argues that *Baker* is inapplicable because, according to Maine, the *Baker* plaintiffs' allegations "contradicted their disclaimer[]." Br. 21. That is incorrect. The parties disputed the cause of the plaintiffs' injuries, and *Baker* held that causation was a "*merits question*[] that a federal court should decide." 962 F.3d at 944. The same dispute exists here. Maine insists that the natural resources at issue were contaminated solely by PFAS from non-AFFF sources, while 3M contends that the PFAS may stem at least in part from MilSpec AFFF. As in *Baker*, a "federal court should be the one to resolve" that "difficult causation question." *Id.* at 945 n.3.[1]

---

[1]    Maine's critiques (Br. 22 n.12) of *Curiale v. A. Clemente, Inc.,* 2023 WL 4362722 (D.N.J. July 5, 2023), and *Marley v. Elliot Turbomachinery Co.,* 545 F. Supp. 2d 1266 (S.D. Fla. 2008), are misguided for the same reason. The disclaimers in those cases did not "contradict other allegations in the complaint." Maine Br. 22. Rather, as in *Baker*, the parties in those cases

Maine does not contest that *Nessel v. Chemguard, Inc.*, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021), denied a motion to remand a PFAS case where the state plaintiff included a MilSpec AFFF disclaimer in its complaint. *See* 3M Br. 23. Rather, Maine attempts (Br. 22-23) to distinguish *Nessel* on its facts because the plaintiff there sought damages for alleged contamination caused by commercial AFFF and disclaimed damages related to MilSpec AFFF (instead of, as Maine did here, disclaiming AFFF sources entirely). But Maine has no response to 3M's argument that this distinction is irrelevant. *See* 3M Br. 32-33. Here, as in *Nessel*, the plaintiff disclaimed damages caused by products the defendant made for the federal government that could support federal officer removal.

Maine also asserts that, unlike the plaintiff in *Nessel*, it "submitted evidence" that any PFAS pollution from MilSpec AFFF was isolated in "distinct" sites for which Maine seeks no recovery. Br. 23. But as discussed in detail in Part B.2, Maine's "evidence" does not support its assertion that none of its natural resources statewide contains commingled PFAS from

---

disputed whether the injuries resulted in part from the defendants' conduct under federal officers, and the courts thus held that there was federal officer jurisdiction. *Curiale*, 2023 WL 4362722, at *6; *Marley*, 545 F. Supp. 2d at 1274-75.

both AFFF and non-AFFF sources. This case thus will involve the same "detailed fact-finding process" about the potential sources of the alleged PFAS as in *Nessel*. 2021 WL 744683, at *3.[2]

The orders remanding asbestos cases that Maine cites (Br. 24 n.13) are inapposite. Those cases involved plaintiffs alleging injuries from asbestos while disclaiming damages from military-related exposures. But as 3M explained (Br. 34), those courts did not respond to the arguments that 3M presents here about how it will raise a government contractor defense to make causation arguments and contest joint-and-several liability.

Further, as far as 3M is aware, none of those cases involved claim splitting. Instead, those plaintiffs actually disclaimed any claims based on federal acts, so there was no possibility of parallel suits in state and federal court. *See, e.g.*, *Hayden v. 3M Co.*, 2015 WL 4730741, at *3 (E.D. La. Aug. 10, 2015). Courts generally are wary of statutory constructions that "would

---

[2]   Maine cites (Br. 23) two remand orders that disagreed with *Nessel*, but neither supports its argument. In one, currently on appeal, the court did not engage with *Nessel*'s reasoning that, notwithstanding an AFFF disclaimer, the case would involve detailed fact-finding on the sources of the alleged PFAS. *Illinois v. 3M Co.*, 2023 WL 6160610, at *5-6 (C.D. Ill. Sept. 21, 2023), *appeal docketed*, 7th Cir. No. 23-2303. The other, *Grosch v. Tyco Fire Prods. LP*, 2023 WL 5993548 (D. Ariz. Sept. 15, 2023), mentioned *Nessel* only in passing, again without discussing its analysis. *Id.* at *7 n.6. Further, the *Grosch* plaintiff alleged that he was "never exposed to . . . MilSpec AFFF." *Id.* at *1. *Grosch* thus did not involve the causation problems in play here, where the at-issue natural resources plausibly contain PFAS from both MilSpec AFFF and non-AFFF sources.

give rise to wasteful, duplicative litigation" in state and federal courts. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006); *see* 3M Br. 40-41.

### 2. The Putative Disclaimer Does Not Sever The Case's Relation To 3M's Manufacture Of MilSpec AFFF.

Maine is incorrect (Br. 17-20) that this case is not related to 3M's supply of MilSpec AFFF to the military. As an initial matter, Maine repeatedly misstates the legal standard for determining whether a case is "for or relating to" a federal act. 28 U.S.C. § 1442(a)(1). As 3M explained, Congress amended Section 1442(a)(1) in 2011 to "broaden[] the universe" of removable cases to embrace actions with any connection or association to a federal act, even if it is not causal. 3M Br. 36 (quoting *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35 n.4 (1st Cir. 2022)). Maine offers no response. Instead, it cites the pre-2011 standard over and over, suggesting (incorrectly) that there must be a causal relation between this case and 3M's supply of MilSpec AFFF to the government. *See, e.g.*, Br. 2 ("disavow[ing] any recovery for injuries caused by AFFF"); *id.* at 16 ("The State's express disclaimer of any relief for injuries caused by AFFF precludes federal officer jurisdiction.").

This case easily clears the low relating-to bar in Section 1442(a)(1). Even crediting Maine's disclaimer, each at-issue PFAS site and natural resource will involve a fact-intensive analysis about whether the alleged contamination was caused in part by MilSpec AFFF. *See* 3M Br. 38-40. This

9

case thus necessarily relates to 3M's supply of MilSpec AFFF. And as 3M explained (Br. 39-40), several decisions applying the lower, relating-to requirement have reached the same conclusion.

Maine does not contest those points. Rather, Maine argues (Br. 17-20) that courts, including this Court, have remanded cases based on similar disclaimers. That is incorrect. Maine relies primarily on *Rhode Island v. Shell Oil Products Co.*, 979 F.3d 50 (1st Cir. 2020). But unlike Maine in this case, Rhode Island did not disclaim damages from a particular source. So Maine is incorrect (Br. 17-18) that *Rhode Island* was remanded to state court based on a disclaimer.

*Rhode Island* is also distinguishable for other reasons. There, Rhode Island alleged that oil companies "engaged in a misinformation campaign" about their products' climate effects, which was unrelated to "anything the . . . companies allegedly did at the behest of a federal officer." 979 F.3d at 60. In contrast, the PFAS contamination that Maine alleges plausibly relates to 3M's supply of MilSpec AFFF. Further, the *Rhode Island* court rejected the companies' argument that the case related to their government contracts, which did not mandate the production or sale of the oil for which Rhode Island sought damages. *Id.* In contrast, the removal notice here plausibly alleges a nexus between Maine's asserted damages and 3M's actions under a federal officer: Natural resources at issue in this case may have PFAS from both non-AFFF sources and MilSpec AFFF that 3M supplied to

the military and was used at military facilities in Maine. *See* A20-24 ¶¶24-31.

Maine's reliance on *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), is equally misplaced. That was a "*global* climate change" case where plaintiffs brought tort claims against oil companies for fossil-fuel emissions worldwide. *Id.* at 706. The court of appeals affirmed a remand order, holding that the plaintiff's disclaimer of fuel provided to the federal government legitimately "carve[d] out a small island" that would have "needlessly complicate[d] the[] case." *Id.* at 713. This case has no such small island. It will involve a host of complex causation questions about whether PFAS from MilSpec AFFF and non-AFFF sources commingled in any at-issue natural resources across Maine. *See* 3M Br. 36-41. And unlike in *Hoboken*, Maine has "designed" its complaints "to circumvent federal officer jurisdiction" for at least some portion of its PFAS-related damages. *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) (favorably discussed in *Hoboken*, 45 F.4th at 713).

Finally, Maine also cites (Br. 19-20) a remand order, *Illinois v. 3M Co.*, *supra*, which determined—similar to *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 229 (D.N.H. 2023)—that the case did not relate to 3M's supply of MilSpec AFFF to the federal government due to an AFFF disclaimer. As noted (at 5, *supra*, and 3M Br. 33), both orders are currently on appeal. Regardless, those orders are wrong for many of the same reasons. *See* 3M

Br. 33-34, 39-40. Namely, the *Illinois* court reasoned that it was "impossi-ble" for the defendant "to be held liable for damages stemming from its ac-tions under federal authority." 2023 WL 6160610, at *6. But as explained above (at 9), federal officer removal is not limited to actions involving dam-ages caused by a federal act. Under the 2011 amendment, any connection or association is sufficient. *See* 3M Br. 35-36. Neither *Illinois* nor *New Hampshire* evaluated the facts of those cases under the correct standard.[3]

### B. Maine's Factual Attack On The Removal Allegations Fails.

Maine devotes much of its brief to an issue the district court did not decide—whether Maine rebutted the detailed allegations and factual evi-dence in the removal notice demonstrating that PFAS from MilSpec AFFF and non-AFFF sources may have commingled in natural resources at issue in this case. *See* Maine Br. 26-34. That argument fails.

On removal, courts do not resolve disputes over facts when the facts are intertwined with the merits. This Court therefore should not wade into the parties' disagreement over the locations of PFAS from MilSpec AFFF, which implicates the scope of 3M's potential liability. Even if resolving these factual questions were warranted, the district court did not address them, and this Court thus should remand the case for the district court to rule in

---

[3] The asbestos cases that Maine re-cites (Br. 20 n.11) are inapposite for the reasons already described. *See* pp. 8-9, *supra*.

the first instance. Regardless, Maine's assertion that 3M failed to provide evidence that PFAS from MilSpec AFFF plausibly has commingled with PFAS from non-AFFF sources near at least one military base is wrong. 3M's notice of removal cites extensive government reports explaining in detail how commingling may have occurred.

### 1.    The Court Should Not Resolve Maine's Factual Attack At The Removal Stage.

Maine seeks to recover for alleged PFAS contamination to its statewide natural resources from non-AFFF sources. *See* A38-39 ¶1; A44 ¶19; A50-52 ¶¶49-57. It contends (Br. 26-34) that PFAS from 3M's MilSpec AFFF has not commingled with PFAS from other sources in any natural resources across the State.

Yet resolving that question is central to determining the extent of 3M's liability, if any. And on removal, courts do not resolve factual disputes if "the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016). Instead, they "ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009); *see also Gentek Bldg. Prods., Inc. v. Sherwin Williams Co.*, 491 F.3d 320, 330-31 (6th Cir. 2007); *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003); *United States v. North Carolina*, 180 F.3d 574,

580-81 (4th Cir. 1999); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

Maine's own cited authority (at Br. 15) is in accord with that approach. *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014) (A "court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim.").

Importantly, this rule applies even when, as here, the plaintiff submits evidence purporting to undermine federal jurisdiction. *See, e.g.*, *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F. 4th 1013, 1023, 1030-31 (5th Cir. 2022); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039-40 (9th Cir. 2004); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529-30 (11th Cir. 1990). Accordingly, if the Court agrees with 3M that the AFFF disclaimer does not defeat federal jurisdiction, pp. 3-12, *supra*, it should remand for the case to proceed in the district court on the merits rather than resolve at this stage the parties' dispute about whether PFAS from both MilSpec AFFF and non-AFFF sources have commingled in any of Maine's natural resources.

The removal decision in *Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014), is instructive. There, a sailor's widow alleged that a manufacturer exposed the sailor to asbestos during his military career by failing to provide adequate warnings on its products. *Id*. at 114-15. The manufacturer removed the case, asserting that any warnings were controlled by military

14

specifications. *Id.* at 115. The widow countered with evidence that jurisdic-tion purportedly was lacking because the military did not place limits on the warning labels. *Id.*

The Second Circuit declined to resolve the parties' factual dispute. "The inquiry on the motion to remand is purely jurisdictional," the court explained, and courts should not "engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." 771 F.3d at 116. The court then held that there was jurisdiction, reasoning that the widow's evidence raised "the very type of factual dispute about the validity of the defense that should be submitted to the judgment of a federal court" on the merits. *Id.* Because the manufacturer provided evidence that "cre-ate[d] . . . a 'colorable' possibility" of a federal defense—Navy specifications that did not mention product warnings—the court remanded for the district court to proceed to the merits. *Id.* at 117. The evidence did not need to de-finitively establish the defense, let alone "raise a fact issue that will survive a motion for partial summary judgment." *Id.*

*Cuomo*'s reasoning applies here. At the removal stage, 3M need not establish definitively the facts supporting its government contractor de-fense; it need only provide evidence that creates a "colorable possibility" of that defense. Whether PFAS from MilSpec AFFF commingled with PFAS from non-AFFF sources in any natural resource is a question to be resolved

15

in the district court on the merits after the benefit of discovery. It is sufficient at this stage that 3M has alleged in detail (with supporting evidence) a colorable possibility that PFAS from MilSpec AFFF has commingled with PFAS from non-AFFF sources in Maine's natural resources.

**2. Maine Fails To Rebut 3M's Showing That PFAS From MilSpec AFFF And Non-AFFF Sources Plausibly Commingled.**

Even if Maine's factual attack were not intertwined with the merits and thus could be resolved on removal, it still would fail.

As an initial matter, this Court should follow the "ordinar[y]" approach to "stay its hand and refrain from making" a "factbound" "determination in the first instance." *United States v. Quirós-Morales*, 83 F.4th 79, 81 (1st Cir. 2023); *see Macera v. Mortg. Elec. Registration Sys., Inc.*, 719 F.3d 46, 49 (1st Cir. 2013) (applying this rule in declining to resolve a jurisdictional challenge). Determining whether 3M has sufficiently shown that PFAS from MilSpec AFFF and non-AFFF sources may have plausibly commingled in at-issue natural resources should be entrusted to the district court, which is "in a position to make any fact determination that may turn out to be necessary." *Macera*, 719 F.3d at 49. Thus, if this Court concludes

that any factual issue relevant to federal officer jurisdiction requires resolution, it should remand to the district court.[4]

Regardless, Maine's factual attack fails. Maine makes (Br. 27-33) three arguments to try to rebut the removal allegations, which are supported by extensive government reports detailing how PFAS from MilSpec AFFF and non-AFFF sources may have commingled. Each of those arguments is incorrect.

### i.    Maine's case is not limited to specific sites named in the complaint.

Maine contends (Br. 27-28) that this case is not related to MilSpec AFFF because the sites with potential commingled PFAS identified in the removal notice are not specifically mentioned in the complaint. But that is irrelevant because Maine has not limited its case to the named sites.

Rather, each count against 3M alleges "injuries to the State's natural resources and property." A94 ¶255, A95 ¶261, A99 ¶284, A102 ¶296, A104 ¶308, A107 ¶321; *see also* A97 ¶270. The complaint broadly defines "natural resources and property" to "includ[e] without limitation fish, wildlife, biota, air, surface water, groundwater, wetlands, drinking water supplies, soil, sediment, public lands the State holds in trust, and State-owned lands." A44

---

[4]   The cases Maine cites (Br. 26 & n.15) where courts of appeals reached jurisdictional questions not addressed in the district court involved purely legal questions that did not require factfinding.

¶19. The case therefore is not limited to specific named sites, but instead encompasses *all* of Maine's natural resources with PFAS attributable at least in part to non-AFFF sources. Maine has never disputed that characterization.[5]

And although 3M may support removal with facts from outside the complaint, 3M Br. 15, other allegations in Maine's complaint are consistent with that understanding. Maine asserts that 3M "caus[ed] widespread contamination and injuries to State natural resources," including "drinking water, groundwater, surface water, wildlife, soil, and sediment." A42 ¶11; *see also* A38 ¶1 (describing "widespread" and "ubiquitous" "contamination of State natural resources"). And Maine alleges that its "ongoing investigation . . . continually discovers additional PFAS . . . in new locations." A43 ¶12. It therefore is irrelevant that the complaint does not specifically name the sites discussed in the removal notice because, on its face, the complaint applies to all sites in Maine.

---

[5]   If Maine is correct that "[j]urisdiction cannot be based on contamination at locations" that are not "identified in the complaint," Br. 28, then the Court also should hold that Maine's case—including the scope of the defendants' potential liability—is geographically limited to those specifically named locations.

ii. **3M's removal notice presented evidence of commingled PFAS resulting from MilSpec AFFF releases.**

Maine also argues (Br. 28-30) that 3M's notice of removal and the evidence it cited do not demonstrate that there are natural resources in Maine with PFAS from both MilSpec AFFF and non-AFFF sources. That too is incorrect. The removal notice contains detailed allegations about four locations with potentially commingled PFAS.

*Bangor Air National Guard Base*. The removal notice alleged that MilSpec AFFF released at Bangor Air National Guard Base migrated to locations with PFAS from non-AFFF sources. A21 ¶28. Maine does not contest those facts. Rather, it argues that the AFFF released from the base was made by Buckeye, which is not a defendant in this case. Br. 28. The Buckeye-made AFFF described by Maine was located in two specific buildings on the base. *See* AECOM, *Final Preliminary Assessment Report, Bangor Training Site, Bangor, Maine* 16-17, 46, 52 (Jan. 2020), https://bit.ly/4bKhHwP (Bangor Report) (cited at A22 ¶28).

But Buckeye's AFFF was not the only AFFF used on and near the Bangor base. The removal notice cited a report prepared for the military that discusses other uses of AFFF on or near the base since 1969. *See* Bangor Report 32. For instance, the report states that the Maine National Guard responded to a recent fuel spill at the adjacent Bangor International Airport "by spraying AFFF across the fuel spill area." *Id.* at 23. The report

19

concluded that the AFFF "may have infiltrated the subsurface soil via cracks in the pavement, the grassy areas north and south of the incident," and a nearby stream that feeds into a tributary (the Kenduskeag Stream) of the Penobscot River, which ultimately feeds into the Penobscot Bay. *Id.* at 9, 23; *see also id.* at 3, 14, 25 (maps). It is therefore plausible that AFFF from this incident made its way into a major waterway.

The report details many similar uses of AFFF near the Bangor base. *See, e.g.*, Bangor Report 23 (discussing AFFF used by the military "for fire training from 1947 to 1984"); *id.* at 32-33 (discussing "several documented releases of PFAS" from the base that "resulted in PFAS concentrations in groundwater"); *id.* at 33 (recounting possible AFFF use in response to airplane crashes); *id.* at 24 (noting that "materials disposed of in landfills," including "used AFFF storage containers," "may create a secondary source" of PFAS). Although the report does not state which companies made the AFFF that was released, these incidents did not involve the two buildings with Buckeye-made AFFF.

Thus, determining which AFFF was used, when it was released, and how it migrated from the Bangor base will be a complex task for the fact-finder. It is sufficient at this stage that 3M has plausibly alleged—and supported with the Bangor report—that PFAS from MilSpec AFFF released on and near the Bangor base migrated into nearby natural resources where it

commingled with the "ubiquitous" and "widespread" non-AFFF PFAS alleged by Maine. A38 ¶1.

*Loring Air Force Base.* The removal notice discussed a report prepared for the military identifying twenty-one areas in or near Loring Air Force Base where AFFF was used. A22 ¶28 (citing Wood Programs, Inc., *Remedial Investigation Work Plan, Per- And Polyfluoroalkyl Substance Response, Former Loring Air Force Base, Limestone, Maine* 34-41 (April 2022) (Loring Report)).[6] The report indicates that PFAS had been detected in nearby natural resources. Loring Report 34-41. The identified AFFF releases began in the 1970s, resulted from training exercises and aircraft fires, and involved hundreds of gallons of AFFF. *Id.* at 36-37.

Maine does not attempt to refute these allegations or the report's detailed descriptions of AFFF use on and around the Loring base. Instead, it asserts that the report "did not connect any of these potential [AFFF] releases to sites with non-AFFF" PFAS. Maine Br. 29.

Yet Maine alleges that non-AFFF PFAS in Maine is "ubiquitous" and "widespread," A38 ¶1, so PFAS from AFFF released at the Loring base plausibly commingled with PFAS from non-AFFF sources in nearby natural resources. Additionally, Maine alleges that non-AFFF PFAS is frequently

---

[6]   The report is accessible at https://ar.afcec-cloud.af.mil/Search by selecting "BRAC," choosing "Loring AFB" from the installation list, and performing a "full document search" for "Final Remedial Investigation Work Plan."

found at wastewater treatment plants and landfills. A42-43 ¶11, A49 ¶47, A50 ¶50. The report states that PFAS from AFFF released at the Loring base may have reached a wastewater treatment facility and that soil containing AFFF was sent to a landfill. Loring Report 36-37. Further, the complaint asserts that "wastewater sludge" is a frequent source of non-AFFF PFAS. A50-51 ¶¶54-56. And the report states that wastewater that may contain AFFF was processed into sludge. Loring Report 37. So again, 3M has plausibly alleged that PFAS from MilSpec AFFF and non-AFFF sources has commingled on and around a military base, and 3M supported those allegations with evidence.

*Brunswick Armed Forces Reserve Center*. The removal notice alleged that AFFF was used near and around Brunswick Armed Forces Reserve Center for thirty years and plausibly migrated off-site. *See* A22 ¶28. 3M cited a report prepared for the military detailing decades of AFFF use at the Center. *Id.* (citing AECOM, *Final Preliminary Assessment Report Brunswick Armed Forces Reserve Center, Maine* 13-14 (Nov. 2019), https://bit.ly/3uDeRbX (Brunswick Report)). The report explained that AFFF was used for decades for fire training activities at Naval Air Station Brunswick (NASB), a facility adjacent to the Center. Brunswick Report 13-14. It identified twelve areas at NASB where AFFF was released. *Id.* The report thus concluded that PFAS from that AFFF may by present in nearby

natural resources. *Id*. Many of those releases are near surface waters, which plausibly carried the AFFF to other locations. *See id*. at 2 (map).

The removal notice explained how PFAS from AFFF released at or near the Center may have commingled with PFAS from non-AFFF sources. The Maine Department of Environmental Protection (DEP) has identified locations near the Center with sewage sludge allegedly containing PFAS from non-AFFF sources. *See* A22 ¶28 (citing Maine Dep't of Env't Prot., *Maine DEP PFAS Investigation*, https://bit.ly/3HVGxfc (last visited Feb. 21, 2024) (DEP Sludge Report)). For example, DEP identified two locations south and east of NASB where sludge was applied as fertilizer to nearly eighty acres of land. *See* DEP Sludge Report (locations 29533 and 30427). According to the report, groundwater and surface water travel south and east away from the NASB. *See* Brunswick Report 9-10. As a result, 3M's allegations that PFAS from MilSpec AFFF and non-AFFF sources commingled near the Center are plausible and supported by evidence.

Maine's responses do not undermine those allegations. Maine primarily argues that PFAS typically contaminate sludge before they are applied to particular sites. Maine Br. 30. But that is immaterial. The point is that AFFF may have migrated from NASB to nearby sludge sites that already had PFAS from non-AFFF sources. Maine also contends that there is "no basis" to allege that any PFAS at the sludge sites came from NASB, which is "a mile or more away." Maine Br. 29-30. But the removal notice explained

that AFFF released from NASB could have migrated through groundwater and surface water to the sludge sites. A22 ¶28. And Maine itself alleges that PFAS are "mobile in the environment, and migrate long distances through soil and groundwater." A48 ¶38.

*Portsmouth Naval Shipyard.* The removal notice plausibly alleged that waste shipped from Portsmouth Naval Shipyard to the Kittery Municipal Landfill contained MilSpec AFFF. The notice cited a DEP report describing how the landfill "accepted wastes" from the shipyard that "included solvents, paints, exc. [sic]." Maine Dep't of Env't Prot., *PFAS Residential Sampling and Analysis Plan for the Kittery Municipal Landfill Site, Kittery, Maine* 2 (Dec. 2021), https://bit.ly/3uzxopy (Kittery Report) (cited at A23 ¶29). The exact types of waste moved from the shipyard to the landfill have not yet been determined. *See* Vivien Leigh, *Private Wells in Kittery Tested for PFAS*, News Ctr. Maine (Dec. 20, 2021), https://bit.ly/3ODGrN9 (cited at A23 ¶29 n.16). DEP has identified PFAS in groundwater near the landfill, *see* Kittery Report 1, and Maine alleges that PFAS from non-AFFF sources are common in landfills, *see, e.g.*, A42-43 ¶11. Thus, it is plausible that waste shipped to the landfill included PFAS from MilSpec AFFF that commingled with PFAS from non-AFFF sources. *See* A23 ¶29.

Maine asserts that, as far as DEP is aware, the Kittery landfill "does not accept liquid waste such as AFFF concentrate or AFFF concentrate mixed with water." Maine Br. 30. But Maine does not explain how it reached

that conclusion. Regardless, not all waste containing MilSpec AFFF is liquid. For example, 3M produced evidence that at least one military facility in Maine may have shipped spent AFFF cannisters to a landfill. *See* Bangor Report 24 (cited at A22 ¶28). Maine thus has not rebutted the plausible, evidence-based allegations in the removal notice about commingled PFAS.

### iii.   Maine's declaration does not undermine any of 3M's removal allegations.

Maine is incorrect (Br. 10) that 3M needed to produce additional evidence in response to a declaration submitted with Maine's remand reply brief. *See* State Add. 1-7. The declaration simply is not inconsistent with 3M's removal allegations and supporting evidence.

For instance, the declaration asserts that DEP has not found AFFF in the drinking water sources at issue in two other lawsuits. State Add. 4-6 ¶¶11-19. But 3M is not relying on allegations of PFAS from MilSpec AFFF in those water sources to support federal officer jurisdiction. The declaration also states that DEP is "not aware" of AFFF at the sludge sites or landfill discussed above. State Add. 7. But the declaration does not assert that PFAS from MilSpec AFFF could not have reached those locations or otherwise question 3M's evidence demonstrating that that could have occurred.

Further, the declaration fails to address any of 3M's allegations and supporting evidence concerning AFFF released on and around Bangor Air

National Base and Loring Air Force Base. *See* Maine Br. 10 n.5 (acknowledging that the declaration does not address those bases). As a result, on its face, the declaration purports to refute only some of 3M's allegations and evidence supporting federal officer jurisdiction in this case.

## C. Maine's Policy Arguments Misconstrue Federal Officer Removal.

Maine makes several policy arguments that misconstrue the federal officer removal statute. The statute's "basic purpose" is to "protect the Federal Government from the interference with its operations that would ensue were a State able" to sue a federal officer in "State court for an alleged" violation of state law based on acts "within the scope" of the officer's authority. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007). Those concerns are implicated whenever "a private person acts as an assistant to a federal official in helping that official" carry out federal operations. *Id.* at 151.

Maine ignores those principles in arguing that federal courts should resist exercising jurisdiction over "state law claims" brought by a state in state court out of comity and "sovereign protection" concerns. Br. 16. That request contravenes the fundamental purpose of preventing "States from paralyzing the Federal Government and its initiatives" through state-court suits against those carrying out federal-government operations. *Watson*, 551 U.S. at 149. All federal-officer removal actions involve state-law claims,

26

and many are brought by states. But Congress decided that the need to protect federal operations from state interference is so great that all state-court actions, not just "for," but also "relating to," actions under federal officers should be removable. 28 U.S.C. § 1442(a)(1).

Maine also argues that endorsing its parallel-litigation approach will not incentivize duplicative cases, because its complaints address "different sites, different products, different defendants (albeit with some overlap) and different facts." Br. 33-34. This is incorrect. At a minimum, if Maine's arguments succeed, 3M will have to litigate the scope and causes of PFAS in the same natural resources near the aforementioned military bases and landfill in both state and federal court. And further complications will arise when the courts overseeing these cases must decide what effect, if any, factual findings made in one suit have on the other. Others are bound to copy Maine's approach by filing multiple lawsuits in bids to have several bites at the damages apple. Maine has no response to these concerns other than to deny their reality.

## CONCLUSION

The Court should reverse and remand with instructions that the district court recall its remand to the state court.

Dated: February 21, 2024                    Respectfully submitted,

/s/ *Michael A. Scodro*

Michael A. Scodro
  1st Cir. Bar No. 1207763
Avi M. Kupfer
  1st Cir. Bar No. 1177771
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com

Jay S. Geller
  1st Cir. Bar No. 84040
LAW OFFICE OF JAY S. GELLER
Lunt Professional Building
74 Lunt Road, Suite 206
Falmouth, ME 04105
(207) 899-1477

Russell B. Pierce, Jr.
  1st Cir. Bar No. 46573
NORMAN HANSON
  & DETROY LLC
2 Canal Plaza
PO Box 4600
Portland, ME 04112-4600
(207) 775-0806

*Counsel for Appellant 3M Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Rule 29(a)(5) because it contains 6,281 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.


Dated: February 21, 2024                 /s/ *Michael A. Scodro*
                                         Michael A. Scodro

## CERTIFICATE OF SERVICE

I certify that on this 21st day of February, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ *Michael A. Scodro*
Michael A. Scodro