

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
mayerbrown.com

**Michael A. Scodro**
T: +1 312 701 8886
MScodro@mayerbrown.com

August 22, 2024

Maria R. Hamilton, Clerk of Court
U.S. Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

Re:  *State of Maine v. 3M Company*, No. 23-1709

Dear Madam Clerk:

I write to advise the Court of *People ex rel. Raoul v. 3M Co.*, 2024 WL 3682099 (7th Cir. Aug. 7, 2024) (published), which supports reversal of the district court's remand order.

In *Raoul*, Illinois sued 3M in state court seeking recovery for PFAS contamination from a specific facility. The complaint "expressly excluded" PFAS from AFFF. Op.2-3. 3M removed on federal-officer grounds, but the district court remanded. Op.2. The Seventh Circuit affirmed based on a particularly dramatic concession by Illinois. Relying on *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), that court recognized that the government-contractor defense is "viab[le]" even when a plaintiff "disclaim[s]" recovery for certain contamination, because "a factfinder would need to apportion the contamination" between sources. Op.4. That task presents "'difficult causation question[s] that,'" under the federal-officer removal doctrine, "'a federal court should be the one to resolve.'" *Id.*

But Illinois "expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources" because it conceded that it may recover only "in areas where the contamination is wholly derived from" non-AFFF PFAS. Op.5. Given that concession, "even a morsel" of PFAS from AFFF would bar Illinois from recovering. *Id.* On that understanding alone, *Raoul* held that the case could proceed in state court.

Maine has made no comparable concession. Quite the opposite. Maine acknowledges that it may "seek to recover" at sites "where there is both AFFF and non-AFFF PFAS" unless this Court prohibits that approach. Br.25 & n.14; *see* 3M Br.24-25; Reply Br.4-5. Maine contends that "commingling cannot serve as a basis of removal," Br.2, but *Raoul* explained that unless a case is limited to areas where "100% of [the] contamination" is from non-AFFF PFAS, it will involve "'difficult causation ques-

tion[s]'" that a federal court should resolve. Op.4-5. Maine argues that *Baker* is inapposite in PFAS cases, Br.21-22, but *Raoul* forecloses that suggestion. Under *Raoul*, even when a party disclaims AFFF-related recovery, a federal court must conduct any remaining apportionment. Op.4-5. Because Maine agrees that apportionment could be required here, this Court should follow *Raoul* and reverse the remand order.

                                          Sincerely,

                                          s/ *Michael A. Scodro*
                                          Michael A. Scodro

                                          *Counsel for Appellant 3M Company*

cc: Counsel of Record (via ECF)

# ATTACHMENT
# (Opinion)

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 23-3031

PEOPLE OF THE STATE OF ILLINOIS, ex rel. KWAME RAOUL, Attorney General of the State of Illinois,

*Plaintiff-Appellee,*

*v.*

3M COMPANY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois
No. 4:22-cv-04075-SLD-JEH — **Sara Darrow**, *Chief Judge.*

ARGUED MAY 30, 2024 — DECIDED AUGUST 7, 2024

Before ST. EVE, KIRSCH, and KOLAR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* 3M Company operates manufacturing facilities throughout the United States, including in Cordova, Illinois (the Cordova Facility). At the Cordova Facility, which is located along the banks of the Mississippi River, 3M produces numerous chemical products, some of which contain per- and polyfluoroalkyl substances (PFAS). Twenty-five miles downstream from the Cordova Facility sits the United

States Army's Rock Island Arsenal. 3M develops and sells aqueous film-forming foam (AFFF)—which contains certain types of PFAS compounds—to the United States military, some of which is used and stored at the Rock Island Arsenal. (Because this AFFF complies with military specifications, it is said to be "MilSpec" AFFF.) However, 3M does not produce or use MilSpec AFFF at the Cordova Facility.

In March 2022, the State of Illinois sued 3M in Illinois state court, alleging violations of the Illinois Environmental Protection Act, 415 ILCS 5/1–5/58.17, the Illinois Fish and Aquatic Life Code, 515 ILCS 5/1-1–5/50-1, and the Illinois Wildlife Code, 520 ILCS 5/1.1–5/4.4. The State also brought its claims under several common law theories. The State alleged that PFAS from the Cordova Facility contaminated the Mississippi River. Notably, the State excluded PFAS that contaminated Illinois's environment from any facility other than the Cordova Facility (including PFAS used in AFFF) from this case.

3M removed the action to federal district court, citing the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as its basis for federal jurisdiction. Specifically, 3M argued that it planned to assert the federal government contractor defense because some of the alleged PFAS contamination in the Mississippi River may have come from AFFF that 3M provided to the U.S. military and which was used or stored at the Rock Island Arsenal.

The State moved to remand the case back to Illinois state court. The district court granted the State's motion, finding that the case did not relate to a federal act because the State's complaint expressly excluded PFAS contamination sourced from AFFF and instead sought recovery only for

contamination from the Cordova Facility (where AFFF is not produced). 3M appealed.

We review the propriety of the removal of a state-court action de novo. *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). Under the federal officer removal statute, a defendant may remove a state court action to federal court if the suit is against "any person acting under" a federal officer, and the suit is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). A defendant seeking removal based on this statute must show the following: (1) it is a person within the meaning of the statute; (2) it is acting under the United States (or its agencies or officers); (3) it has been sued "for or relating to any act under color of such office"; and (4) it has a "colorable federal defense to the plaintiff's claim." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180–81 (7th Cir. 2012) (quotation omitted).

3M cannot satisfy the fourth element. The federal government contractor defense "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design." *Id.* at 1183 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511–12 (1988)). We need not delve further into the details of the defense, however, because the State's concessions on appeal have foreclosed 3M's ability to assert it.

3M's defense presumes that the PFAS contamination the State alleges could either have come from the Cordova Facility or from AFFF out of the U.S. Army's Rock Island Arsenal. If the contamination came from AFFF, then the government contractor defense could apply. This would be true even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF. For

instance, if a designated area of the Mississippi River is contaminated with PFAS from both the Cordova Facility and from AFFF, then a factfinder would need to apportion the contamination between that stemming from the Cordova Facility (which would not be subject to the government contractor defense) and that sourced from AFFF (which would potentially be subject to the defense).

Indeed, we have previously noted the viability of the government contractor defense in a similar context. In *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), former residents of a housing complex sued nine industrial manufacturing companies, alleging that they polluted the soil in and around the site of the residence with lead and arsenic. *Id.* at 939. The defendants removed the case to federal court under the federal officer removal statute, contending that they partially polluted the soil at the government's direction. *Id.* at 939, 944. The plaintiffs then moved to remand the case to state court, which the district court granted. *Id.* at 940. We reversed. In doing so, we rejected the plaintiffs' argument that their lawsuit disclaimed any contamination arising out of the defendants' work for the government. *Id.* at 945 n.3. Instead, we concluded that the parties' dispute over "whether the [plaintiffs'] injuries ar[o]se from products [the defendants] manufactured for the government … is just another example of a difficult causation question that a federal court should be the one to resolve." *Id.*

*Baker* might have supplied 3M with a colorable federal defense. But the State clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed PFAS contamination—in other words, PFAS contamination arising from both the Cordova Facility and from AFFF

from the Rock Island Arsenal. Further, the State expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources. Simply put, for the State to recover against 3M for PFAS contamination in a designated area, 100% of that contamination must be sourced from the Cordova Facility. If even a morsel of contamination is not from PFAS produced at the Cordova Facility (such as AFFF out of the Rock Island Arsenal), the State's recovery is barred. Because of this concession, this case falls outside of the scope of *Baker*. 3M cannot present a colorable federal government contractor defense in line with *Baker* because the defense is wholly irrelevant under the State's theory of recovery. In this case, 3M is liable for PFAS contamination only in areas where the contamination is wholly derived from the Cordova Facility, and the government contractor defense does not apply to PFAS sourced from that facility. Thus, 3M's attempt to remove the case under the federal officer removal statute fails under the fourth element.

AFFIRMED